879 F.2d 1203
 William E. SINGER Petitioner-Appellant,
v.
COURT OF COMMON PLEAS, BUCKS COUNTY, PENNSYLVANIA; The
Attorney General of the Commonwealth of
Pennsylvania; and the District Attorney
of Bucks County, Pennsylvania
Respondents-Appellees.
 No. 88-1964.
 United States Court of Appeals,
Third Circuit.
 Argued May 17, 1989.
Decided July 19, 1989.
 
 Peter Goldberger (argued), Philadelphia, Pa., for petitioner-appellant.
 C. Theodore Fritsch (argued), Chief Deputy Dist. Atty., Dist. Atty.'s Office, Doylestown, Pa., for respondents-appellees.
 Before GIBBONS, Chief Judge, MANSMANN and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Chief Judge:
 
 
 1
 William E. Singer appeals from an order of the district court which rejected the report and recommendation of a United States magistrate that Singer's petition for a writ of habeas corpus be granted, and denied the petition. Singer is under sentence by the Court of Common Pleas of Bucks County, Pennsylvania, following his conviction of simple assault on his wife and stepdaughter and of aggravated assault on a police officer in violation of 18 Pa.Cons.Stat. Sec. 2702(a)(3) (1982). His state court remedies on all issues he raised in his federal habeas corpus petition have been exhausted. We will reverse the district court order and remand for the entry of an order (1) granting habeas corpus relief unconditionally on the aggravated assault sentence and (2) granting habeas corpus relief on the simple assault sentences conditional upon the Commonwealth granting Singer a new trial on those charges within a reasonable time.
 
 
 2
 The magistrate and the district court decided the petition on the basis of the state court record. Singer's habeas corpus petition asserts: (1) that his conviction for aggravated assault was unconstitutional (a) because the record at trial is critically deficient with respect to a necessary element of the offense, and (b) because the trial court refused to permit the jury to determine that element; (2) that both the aggravated assault conviction and the simple assault convictions are unconstitutional because Singer was deprived at trial of the effective assistance of counsel; and (3) that illegally obtained evidence was admitted at his trial, and no opportunity was afforded him in the court of common pleas for a hearing on suppression of that evidence. We will refer separately to the facts of record with respect to each contention.
 
 
 3
 * On September 15, 1983, Singer resided in Middletown Township, Bucks County, Pennsylvania with his wife and a twenty-one year old stepdaughter. On that date, during daylight, Singer and his stepdaughter became embroiled in an argument over her failure to contribute $25 weekly toward household expenses, and the use by her of a washing machine. Singer allegedly punched his stepdaughter, grabbed her by the throat, and threw her to the floor. When his wife intervened, he allegedly punched her. Thereupon both women fled the house and called the police.
 
 
 4
 Officer Patton responded. The women reported the domestic dispute to him, adding, according to Patton, that when they tried to get their car keys to leave the area Singer threatened to kill them. He observed some red marks and bruises on the stepdaughter's arms and the left side of her face. In accordance with Middletown Township police custom in domestic disturbance situations, Patton continued to observe the house and called for an additional police officer and a supervisor. While he was awaiting the assistance, Patton learned from the women that Mr. Singer had several rifles.
 
 
 5
 Police Chief Chitwood arrived on the scene in response to Officer Patton's radio call. He ordered the area cordoned off from the public, and over the course of over an hour attempted to speak to Singer from outside the house. Chitwood repeatedly asked Singer to open the door and allow the police to come in and check to make sure everything was all right. Singer refused to open the door, and explicitly asserted that the police had no right to enter his home without a warrant.[1] According to Chitwood, Singer "was talking to somebody on the phone and the conversation was like, 'If they try to come in here they're going to get hurt. Nobody is coming into my house, my castle,--' " (A. 204). The officers testified they also heard Singer running on the stairs. Singer never brandished, threatened to use, or mentioned a weapon. There was radio communication with police headquarters, and a judicial officer was nearby, to whom an application for an arrest warrant could have been made. Singer could not have left the area since the police surrounded the house.
 
 
 6
 Eventually Chief Chitwood lost patience, informing the officers he was going "to give him five minutes. If he doesn't open the door we are going to break a pane of glass and try to get in." (A. 205). Chitwood then announced to Singer that he was under arrest for assaulting his wife and stepdaughter and that they were coming in. He broke out a pane of glass in the front door and opened the door. Singer kicked it shut, resulting in two cuts on Chitwood's wrist. Chitwood then radioed officers at the rear of the house to make noises as if they were entering. When Singer ran to the rear of the house, Chitwood entered the front. Singer came running back toward the front, swung the telephone, on which he had been talking, over his head. He was subdued, but not before he choked and scratched Chitwood and kicked Officer Plebani.
 
 
 7
 Singer was convicted of a violation of 18 Pa.Cons.Stat. Sec. 2702(a)(3) (1982), which then provided:
 
 Aggravated assault
 
 8
 (a) Offense defined. A person is guilty of aggravated assault if he:
 
 
 9
 ....(3) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to a police officer making or attempting to make a lawful arrest;....
 
 
 10
 (emphasis supplied).[2] Thus the legality of the arrest was an element of the offense. A habeas corpus court must make a determination whether there was evidence from which a factfinder could find each element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
 
 
 11
 The trial court did not submit the question of legality of arrest to the jury. Instead, relying on Commonwealth v. Franklin, 248 Pa.Super. 145, 374 A.2d 1360 (1977) and Commonwealth v. Stortecky, 238 Pa.Super. 117, 352 A.2d 491 (1975), the trial court made its own determination, affirmed by the state appellate court, that the arrest was lawful. Singer contends that by taking from the jury the determination beyond a reasonable doubt of a substantive element of the offense, the Commonwealth violated due process. See Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). We do not, however, rest our decision on this ground, because Singer also asserts that the Jackson v. Virginia evidentiary standard on the lawful arrest element of the offense has not been satisfied. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If he has once been placed in jeopardy and the evidence is legally insufficient, Singer cannot be retried. See Burks v. United States, 437 U.S. 1, 18, 98 S.Ct. 2141, 2151, 57 L.Ed.2d 1 (1978).
 
 
 12
 The Commonwealth does not contend that probable cause to believe that Singer had previously assaulted his wife and stepdaughter not in the presence of the arresting officer, would permit a warrantless arrest in Singer's home. Warrantless entries into a home are presumptively unreasonable. See Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The Commonwealth, instead, offers two defenses to the habeas corpus petition.
 
 
 13
 The Commonwealth's first defense is that Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) forecloses consideration of the illegal arrest claim. There is no merit to this defense. Stone v. Powell deals only with the nonavailability of habeas corpus collateral review as a means of enforcing the exclusionary rule as a prophylaxis against Fourth Amendment violations. It has no application to other constitutional violations. Rose v. Mitchell, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979); Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Where, as here, the issue is sufficiency of the evidence on an element of the offense, the controlling precedent is Jackson v. Virginia, supra.
 
 
 14
 The Commonwealth's second defense is that the trial court's finding that the arrest was lawful is supported by the record. The Commonwealth contends, and the state courts held, that the warrantless entry and arrest in Singer's home was justified by exigent circumstances. We hold that no factfinder could on this record find exigent circumstances beyond a reasonable doubt. First, while domestic violence is a serious matter, the victims of the assault were no longer in the house and were in no danger. Second, while the women told the police Singer owned long guns, they did not say he ever threatened them or anyone else with them. He was not seen holding a gun. He never threatened the officers with a gun. Singer was in the house, and refused to come out. There was no chance that he could escape, however, in the minimum time it would take to obtain a warrant. The entry was in daylight, but a judicial officer was available during the day. Finally, the entry was made forcibly, not peaceably, and in face of the assertion of Fourth Amendment rights. Finally, all the circumstances relied on by the Commonwealth as evidence of exigent circumstances were known to Chief Chitwood as soon as he arrived at the house. He nevertheless chose to talk to Singer for roughly an hour and a half. He stood on the porch talking through the door, evidencing no concern for his safety or that of other officers. The long guns, even if they were evidence relevant to the assault on the women, could not be flushed down a toilet like familiar forms of contraband. The trial court concluded that Chitwood could not send an officer to procure a warrant because a lethal attack might come from the house at any moment. There is no evidence that any rational person would so believe, and no evidence that the police chief or the officers did so believe.
 
 
 15
 The Commonwealth's proof on the legality of the arrest cannot be found to support a finding on that element of the defense beyond a reasonable doubt or by any other evidentiary standard. Thus, the writ of habeas corpus must issue unconditionally with respect to the aggravated assault charge.
 
 II
 
 16
 Singer also challenges his conviction on the simple assault charges on the ground that he was deprived of the effective assistance of counsel. He was, of course, entitled to the assistance of counsel at every critical stage of the prosecution. See Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (Sixth Amendment right to counsel at preliminary hearing); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (right to counsel at pre-trial line-up); Powell v. Alabama, 287 U.S. 45, 57, 53 S.Ct. 55, 59, 77 L.Ed. 158 (1932) (right to counsel from time of arraignment; appointment on day of trial too late). See also Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962) (cannot presume waiver of right to counsel from a silent record).
 
 
 17
 There is no record of what transpired at Singer's arraignment or preliminary hearing. The attorney representing the Commonwealth represented to the Federal Magistrate, and confirmed in this court, that any transcript of that proceeding is lost. The state court record commences for purposes of habeas corpus review on the morning of Singer's trial.
 
 
 18
 The trial proceedings commenced with examination of prospective jurors for bias by the presiding judge and the prosecutor. At this point, the judge asked who was acting as defense counsel for Singer. A colloquy followed:
 
 
 19
 THE COURT: All right now, who is counsel for Mr. Singer?
 
 
 20
 MR. SINGER: Have no counsel, denied counsel. Was denied counsel--
 
 
 21
 ....
 
 
 22
 THE COURT: Please be seated for a moment. Let's see if I can understand this. Is there a Public Defender here?
 
 
 23
 MR. UTMAN: I am from the Public Defender's Office, Richard Utman.
 
 
 24
 THE COURT: ... Why are you here, Mr. Utman?
 
 
 25
 MR. UTMAN: Asked by Judge Garb to sit with the defendant.
 
 
 26
 THE COURT: As stand-by, because Mr. Singer does not wish to be represented by you; is that correct? You don't wish Mr. Utman to represent you?
 
 
 27
 MR. SINGER: Your Honor, I cannot have Mr. Utman represent me as effective counsel of my choice when he just come [sic] in to the courtroom for one hearing before Judge Garb.
 
 
 28
 THE COURT: Yes, all right. This matter, I see, the event occurred on September 15, 1983 and this is February 6, 1984. Have you sought to obtain counsel during the interim period?
 
 
 29
 MR. SINGER: Your Honor, I have filed Motions or Affidavits of Impecuniosity and poverty and cannot afford counsel. Therefore, I ask if I would be allowed to have unfettered counsel of my choice.
 
 
 30
 THE COURT: We have appointed counsel for you and would be glad to recess so you may discuss this with him.
 
 
 31
 MR. SINGER: Your Honor, how can the man--the man has not been on the case more than five minutes before I started the thing, how can we have effective counsel?
 
 
 32
 THE COURT: Let me stop you there. Back when you were arraigned, first the District Justice level and at the preliminary hearing there, our practice is and I'm sure it still is that they say to you at that time, the District Justice will tell you, "Mr. Singer, do you have a lawyer?" And, if you say, "No," that you can't afford one, I am sure he told you at that time that you could apply for lawyer; didn't he?
 
 
 33
 MR. SINGER: Demanded effective unfettered counsel of my choice at that time and was denied a Court Reporter.
 
 
 34
 THE COURT: Did you ask for a lawyer at the time?
 
 
 35
 MR. SINGER: I asked for effective counsel of my choice at that time.
 
 
 36
 THE COURT: You are not entitled to counsel of your choice; don't like those words: "Entitled to counsel of your own choice."
 
 
 37
 MR. SINGER: That way, Your Honor, if I'm not going to have effective counsel, what good is having counsel if the man is going to walk in and represent me within twenty minutes of the case. How can he prepare a case effectively?
 
 
 38
 THE COURT: You had the opportunity to secure counsel from the time of the preliminary hearing; at least right on through this date. You are in court for arraignment one other time and you did not have counsel. Judge Garb and--apparently you told Judge Garb this this morning. I don't know, but I am told then that Richard Utman who is a lawyer has been appointed as is required or recommended by our Supreme Court regulations, so to speak, to stand by and assist you any way he can and will do that. May I ask this gentleman's name?
 
 
 39
 MR. SINGER: My next best friend.
 
 
 40
 THE COURT: Your name, sir?
 
 
 41
 A VOICE: Armond Pascetta, P-A-S-C-E-T-T-A, Mr. Singer's next friend.
 
 
 42
 THE COURT: By "next friend" you mean advisor of sorts, but not a lawyer?
 
 
 43
 MR. SINGER: Of sorts.
 
 
 44
 THE COURT: Thank you.
 
 
 45
 Mr. Singer, you may ask the prospective jurors whatever reasonable questions you choose to ask at this time.
 
 
 46
 Singer persisted in asserting that he did not want to represent himself and that an attorney who was appointed that same morning could not effectively represent him.
 
 
 47
 After the jury was dismissed for the day Singer and the judge engaged in another colloquy:
 
 
 48
 THE COURT: May I finish and then you will have your turn.
 
 
 49
 I can assure, that in this courtroom, that your rights will not be violated and I will seek to uphold every right to have representation of counsel.
 
 
 50
 Now, I must say to you that counsel has been appointed. I must say further to you, that when you have a right to counsel, you have a right to counsel but not to counsel of your choice. There is a great difference. You cannot say, "All right, I will, let me look over all the lawyers in the Bucks County Bar and choose one." No. If you can afford to engage an attorney then make your own deal with your own lawyer any way you want; we recognize that. If you come to court and say, "I am impoverished and cannot afford counsel," as you have done, then the Court does so and will appoint an attorney for you. If you don't like Mr. Utman for any reason at all, you don't have to have him. I think, very frankly, it is a mistake. I think you should let Mr. Utman handle the case for you. I will say to you that you have a right to counsel and you have counsel standing by and at any moment, this moment, he can take over the trial for you.
 
 
 51
 MR. SINGER: Well, Your Honor, can I have effective counsel? In the fact that--I am not belittling or putting down the Public Defender, but the point is, the Public Defender in his short period of time that he has heard the case so far, only was appointed this morning about 10:00 or 11:00. How can he in that short period of timeTHE COURT: You and your friend have come up with these words, come up with this phrase "effective assistance of counsel" and these are words of art. What you mean as effective assistance of counsel, whatever words you said, and what the Supreme Court means as effective counsel may be six different things. You have at your side counsel who can be effective if you cooperate with him. If this were a completely, let me say, different kind of case, it may well be that a continuance would be granted so that your counsel could do a lot of investigating and so forth. But, you have had this opportunity and way back waived any right you may have had at this time to such a plea, you see. So, if you're asking me a question; yes, you have the right to effective assistance of counsel. Yes, you have counsel standing by to help you and I urge you, after we leave this courtroom, to talk with him and let him handle your case. You can tell him everything you know about the case.
 
 
 52
 MR. SINGER: Well, Your Honor, according to the Pennsylvania Rules of Court--
 
 
 53
 THE COURT: Now, listen--
 
 
 54
 MR. SINGER: It says--
 
 
 55
 THE COURT: I know what it says.
 
 
 56
 MR. SINGER: I want to get this on the record, okay? That is states in there--
 
 
 57
 THE COURT: In where?
 
 
 58
 MR. SINGER: In the Pennsylvania Rules of Court.
 
 
 59
 THE COURT: Don't know what you're talking about, Supreme Court Rules or the local rules?
 
 
 60
 MR. SINGER: Local rules of Pennsylvania Rules of Court. The book you can buy, it's in the law library; that the Court is supposed to go by and it states, the Rules of Court under Argus versus--
 
 
 61
 THE COURT: Those names mean nothing to me.
 
 
 62
 MR. SINGER: It states that the effective assistance of counsel has to be granted, at the latest, at the preliminary hearing and I was denied counsel at the preliminary hearing and was denied counsel at arraignment, was denied counsel on every step of this criminal indictment.
 
 
 63
 THE COURT: Stop, have you been denied counsel today?
 
 
 64
 MR. SINGER: I got representation but have been denied--
 
 
 65
 THE COURT: You have been denied what you would say is effective representation?
 
 
 66
 MR. SINGER: I have representation now.
 
 
 67
 THE COURT: This is getting us nowhere, will not listen to any more.
 
 
 68
 MR. SINGER: Okay, then Your Honor, I make demands for statement which have not been answered in writing and proof and--
 
 
 69
 THE COURT: See, the problem is that your [sic] not a lawyer and your next friend is not a lawyer although he is a paralegal, he says, but doesn't understand the words....
 
 
 70
 And, finally, before court was recessed for the day, the trial judge once again urged Appellant to accept his appointed counsel:
 
 
 71
 THE COURT: Mr. Singer, in the meantime, still on the record, I urge you once again that you accept counsel who has been appointed for you and to act in accordance with his guidance and you will be far better off. I simply have no other words that I can give you than to say that he knows the law, you and your friend do not. Goodnight.
 
 
 72
 The Commonwealth does not contend that any counsel was appointed to represent Singer prior to the morning of the trial. It does not contend that in proceedings before a different judge on that morning he effectively waived his Sixth Amendment right to counsel. It does not contend that there was any evidence before the trial court of any such waiver at the time of Singer's arraignment several months earlier, or that it could establish even now that a waiver occurred at that time. Its sole contention, which the district court accepted, is that the discussions quoted above, on the morning of trial, were an effective waiver of Sixth Amendment rights. There are several weaknesses with this contention. To begin with, the trial court never made a finding of waiver on the day of trial. The court merely assumed from a silent record that Singer had at some earlier time been informed of his Sixth Amendment rights and waived them. Neither the trial court nor we can make such an assumption.
 
 
 73
 Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not a waiver.
 
 
 74
 Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962). Moreover, the trial court never took steps which might have elicited even an untimely waiver. He never told Singer the advantages of having counsel, the defenses which might be presented, the difficulties of proceeding without counsel, or the range of punishment he might be exposed to. See Piankhy v. Cuyler, 703 F.2d 728 (3d Cir.1983) (when judge fails to inform accused of benefits of attorney as related to defenses and punishment, waiver of counsel is inadequate). Indeed to the extent that an obviously frustrated trial judge permitted him to do so, Singer made it clear that he did not want to waive the right to counsel, but desired effective counsel. The suggestion that his protests amounted to a waiver of counsel makes a mockery of the uses of the English language. Finally, the Commonwealth cannot construct a knowing waiver from the fact that it tendered to Singer on the very morning of trial an attorney totally unfamiliar with his case. See Powell v. Alabama, 287 U.S. 45, 57, 53 S.Ct. 55, 59, 77 L.Ed.2d 158 (1932) (appointment of counsel on day of trial comes too late to be effective).
 
 
 75
 Singer did not receive, and did not waive, the effective assistance of counsel which is required by the Sixth Amendment in his trial on the simple and aggravated assault charges. His confinement on the judgment of sentence based on his conviction on the simple assault charges must be terminated by the issuance of a writ of habeas corpus. On those charges, however, there was sufficient evidence of an assault on his wife and stepdaughter to go to the jury. Thus, unlike and in contrast with the aggravated assault charge, the writ should on those charges be conditional upon the Commonwealth granting him a new trial within a reasonable time fixed by the district court.
 
 III
 
 76
 Singer also contends that his long guns, introduced in evidence at his trial, were seized from his home after an arrest in an illegal search and seizure, and that they should not have been admitted in evidence. Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) bars consideration of an exclusionary rule contention in a state habeas corpus case if the petitioner was given a full and fair opportunity to litigate the Fourth Amendment claim in the state court. Singer and the Commonwealth disagree sharply on the question whether Singer was given such an opportunity. There seems to be little record support for the Commonwealth's position. If we were not authorizing a conditional writ of habeas corpus on the simple assault charges it might be necessary to decide whether a federal court evidentiary hearing on that issue is necessary. Since, however, we have directed the issuance of the writ, there is no need to resolve that issue. If a retrial takes place the long guns, which appear to have little relevance to the simple assault charges, may not be offered in evidence. If they are, a different record may put any Fourth Amendment issue in a different factual framework. Thus, we do not address Singer's Fourth Amendment claim.
 
 IV
 
 77
 The judgment appealed from will be reversed, and the case remanded for the entry of an order (1) granting habeas corpus relief unconditionally on Singer's aggravated assault sentence, and (2) granting habeas corpus relief on the sentences for simple assault on his wife and stepdaughter conditional upon the Commonwealth granting Singer a new trial on those charges within a reasonable time.
 
 
 
 [1]
 On the front door Singer hung a printed cardboard sign containing the text of the fourth amendment and a warning to law enforcement personnel that they should obey its command on pain of federal criminal prosecution under 18 U.S.C. Sec. 241 (A. 17576)
 
 
 [2]
 The statute has subsequently been amended to eliminate the "making or attempting to make a lawful arrest" language and substitute "in the performance of duty." See 18 Pa.Cons.Stat.Ann. Sec. 2702(a)(3) (Purdon Supp.1988)