UNITED STATES of America

v.

Alexander Eugenio MOSKOVITS.

Crim. No. 87–284–01.

United States District Court,
E.D. Pennsylvania.

Sept. 1, 1994.

———

AMENDED OPINION

LOUIS H. POLLAK, J.

In December of 1987, in a superseding indictment, Alexander Moskovits—then a student at the University of Pennsylvania—was charged, together with four other per-

sons, with numerous drug and drug-related offenses, some of which allegedly took place at the University of Pennsylvania. Mr. Moskovits was the principal accused; non-trial dispositions of the charges against the other defendants resulted in Mr. Moskovits being tried alone. The ensuing procedural history has been complex. The principal events covering Mr. Moskovits' trial, conviction and sentence (1988), affirmance of conviction (1989), vacation of sentence (1991), and subsequent resentencing and affirmance of new sentence (1992), have been compendiously summarized in a prior opinion:

> In June of 1988, a jury found Moskovits guilty of conspiracy to distribute in excess of one kilogram of cocaine; four counts of possession with intent to distribute cocaine; five counts of causing interstate and foreign travel with intent to promote unlawful activity; and eight counts of unlawful use of a telephone to facilitate a drug conspiracy. On September 7, 1988, I sentenced Moskovits to a period of incarceration of seventeen years (divided between a mandatory minimum of ten years without parole on Count Eight, a possession count, and seven years on Count One, the conspiracy count). Moskovits appealed from the judgment of sentence, and, on April 13, 1989, the Third Circuit affirmed his conviction in an opinion not for publication. The Supreme Court denied certiorari on October 2, 1989.

> Approximately two weeks after the Supreme Court denied certiorari, Moskovits filed a *pro se* "Motion for Correction of Sentence Pursuant to Federal Rule of Criminal Procedure 35(a)." Therein, Moskovits argued, among other things, that his sentence on Count Eight had been improperly enhanced on the basis of a prior conviction in Mexico obtained without the assistance of defense counsel at critical stages of the proceedings. Subsequently, James D. Crawford, Esq., entered his appearance for defendant and consideration of that motion was held in abeyance at Mr. Crawford's request. Thereafter, on November 28, 1990, William M. Kunstler, Esq., entered his appearance for defendant and filed a new motion styled as a "Motion

Under 28 U.S.C. § 2255 and FRCRP 35(a) & (b)." That motion, which expressly incorporated the previous *pro se* Rule 35(a) motion, argued that defendant's trial counsel, Robert Simone, Esq., rendered constitutionally ineffective assistance of counsel by failing to argue to the court at sentencing that the Mexican conviction was obtained in violation of due process and therefore should not enhance Moskovits' sentence. The combined § 2255/Rule 35 motion requested a *de novo* sentencing hearing to evaluate what effect the Mexican conviction and ineffective assistance of counsel might have had upon the sentence.

In a September 9, 1991 order, I granted defendant's motion to vacate his sentence. [*United States v. Moskovits,* 784 F.Supp. 183 (E.D.Pa.1991)]. (The government's motion to reconsider that decision was denied on January 13, 1992.) A resentencing hearing was held on March 3, 1992, after which I imposed a five-year mandatory minimum on Count Eight, to be followed by ten further years of imprisonment (seven years on Count One and three years on Count Twenty) for an aggregate of fifteen years. On March 9, 1992, defendant filed a notice of appeal from the sentence, and, in an August 26, 1992 memorandum opinion, the March 3, 1992 sentence was affirmed.

*United States v. Moskovits,* 815 F.Supp. 147, 148–49 (E.D.Pa.1993) (footnotes omitted).

While his appeal from the new sentence was pending, Mr. Moskovits filed a § 2255 motion to vacate his conviction. Mr. Moskovits' contention was that the constitutional flaw that invalidated his initial sentence—the failure of his trial attorney to challenge his Mexican conviction—also undermined his conviction, since Mr. Moskovits had refrained from testifying in his own defense because the two attorneys representing him at trial, Robert Simone, Esq., and Milton Grusmark, Esq., had advised him that if he were to take the stand the Mexican conviction would probably be utilized to impeach his testimony, and thereby be brought to the jury's attention with potentially very damaging consequences. After determining that the § 2255 motion was not procedurally barred, *United*

*States v. Moskovits,* 815 F.Supp. 147 (E.D.Pa.1993), I conducted an evidentiary hearing and, on the basis of the record there made, vacated Mr. Moskovits' conviction and directed that there be a new trial. *United States v. Moskovits,* 844 F.Supp. 202 (E.D.Pa.1993).

The new trial is scheduled to commence on September 21, 1994. Mr. Moskovits has decided to represent himself at trial. I have appointed L. Felipe Restrepo, Esq., and Lawrence S. Krasner, Esq., to serve as backup counsel, available to assist Mr. Moskovits whenever he requires their assistance.

Mr. Moskovits has filed a Motion for Judicial Disqualification, pursuant to 28 U.S.C. § 455(a), a statute which directs that "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." It is Mr. Moskovits' submission that my long-standing connection with the University of Pennsylvania—where from 1974–78 I was a full-time, and have since been an adjunct, faculty member; and where my wife has been a member of the administrative staff since 1975—makes it inappropriate for me to preside at the upcoming trial. The government resists the motion as (a) insufficient in law and (b) untimely.

The question whether I should disqualify myself from presiding in Mr. Moskovits' case is not a new one. I raised it *mea sponte* prior to the original trial. A letter I wrote to Mr. Simone, Mr. Moskovits' then counsel, on February 29, 1988, characterizes the matter as I saw it six years ago; the letter shows that at that time I could not perceive "any problem in my serving as trial judge" but felt that all counsel should be advised so that they might, if so minded, pursue the question. The full text of the letter is as follows:

Dear Mr. Simone:

The purpose of this letter is to advise you, as I have advised prior counsel for Mr. Moskovits (and counsel for the Government), of my affiliation with the University of Pennsylvania—a matter which, arguably, bears on the appropriateness of my serving as trial judge in Mr. Moskovits' case. The arguable relevance would be that Mr. Moskovits has been a student at

180

the University of Pennsylvania and the indictment alleges that certain of the activities for which he is asserted to have responsibility took place on the premises of the University.

I was a full-time member of the law faculty from 1974 to 1978, when I left to become a member of this court. Since that time, I have (with the exception of the academic year 1978–79) served as a lecturer at the Law School, teaching one course each year.

Inasmuch as (1) the University of Pennsylvania is not alleged to be party to, or a victim of, any of the activities covered in the indictment, and (2) Mr. Moskovits was not a student at the Law School and the activities alleged in the indictment do not relate to the Law School, I have concluded that there is no ground on which I should recuse myself. However, I thought it important that Mr. Moskovits and the Government should be apprised of these matters. Up to now neither Mr. Moskovits nor the Government has seen any problem in my serving as trial judge. But, since you and Mr. Grusmark have just entered appearances, I think it important that you consider the matter for yourselves. I look forward to your advising me soon or your views, whatever they may be.

Sincerely,
[signed] Louis H. Pollak

cc: Kristin Hayes, Esq.
Dennis Wilson, Esq.
Clerk's Office

The issue was not pursued by Mr. Simone and his co-counsel, Mr. Grusmark. In March of 1990, Mr. Moskovits, *pro se,* filed a motion for a new trial which invoked Federal Rule of Criminal Procedure 33 § 455(a) and posed numerous questions about my connections with the University of Pennsylvania; a copy of that motion is appended to this opinion. In the course of hearings in 1991, Mr. Moskovits, according to his present motion papers, did revert to the issue of disqualification, but apparently it was not pressed by Mr. Moskovits' then attorney, William Kunstler, Esq.

In one important respect, Mr. Moskovits' present motion for disqualification goes beyond my and my wife's connections with the University of Pennsylvania. Mr. Moskovits' present motion brings to the fore a November 29, 1990 letter from Constance C. Goodman, a Judicial Inquiry Officer at the University of Pennsylvania, sent to Mr. Moskovits during a period in which he was an inmate at the Federal Correctional Institution at Talladega, Alabama. The letter advised Mr. Moskovits that Vice–Dean Janice Bellace, of the Wharton School of the University of Pennsylvania, had filed a complaint against Mr. Moskovits "for violations of the University's Code of Conduct;" the complaint being based on Mr. Moskovits' "conviction" in this court. The full text of the letter follows:

Dear Alex:

A complaint has been filed against you under the Charter of the University Student Judicial System for violations of the University's Code of Conduct. The complainant, Dr. Janice Bellace, Vice Dean, Wharton Undergraduate Division, is basing her complaint on your conviction of:

— Conspiracy to possess with intent to distribute and to distribute cocaine, Schedule II narcotic controlled substance. 21 U.S.C. § 846

— Distribution of cocaine. 21 U.S.C. § 841(a)(1) of racketeering enterprise. 18 U.S.C. § 1952

— Aiding and Abetting. 18 U.S.C. § 2(a)

I would be amenable to discussing this complaint with you or your attorney. My office number is 215–898–5651. We will need to discuss the possibility of bringing this complaint to the Hearing Board.

I am enclosing a copy of the General Conduct Code and the Charter of the University Student Judicial System so that you can familiarize yourself with the University's procedures.

Sincerely,
Constance C. Goodman
Judicial Inquiry Officer

Enclosures: General Conduct Code
Charter of the University Student Judicial System

cc: Dr. John R. Brobeck
Judicial Administrator

In Mr. Moskovits' view, the letter from Ms. Goodman to him of November 29, 1990, predicating the Wharton "complaint" on Mr. Moskovits' "conviction" in this court, establishes "the University of Pennsylvania's direct interest in the outcome of the prosecution of this defendant." The letter, so the argument runs, thus reflects a change in the situation characterized in my letter to Mr. Simone of February 29, 1988. There I said that "the University of Pennsylvania is not alleged to be a party to, or a victim of, any of the activities covered in the indictment." But the filing of Vice–Dean Bellace's "complaint" against Mr. Moskovits is said to place the University in the position of "victim."[1]

The government sees the matter differently:

> [T]he fact that the University of Pennsylvania has begun disciplinary proceedings against the defendant based on the evidence presented during the original trial does not transform it into an interested party in the criminal prosecution. As the government understands the University's disciplinary process, the proceedings were begun as a result of the information on the public record. The defendant has the right to contest the proceedings and the matter will proceed to a hearing. The University is simply using the information developed on the public record to take disciplinary action against the defendant. The disciplinary proceedings are wholly separate from the criminal proceedings and their outcome in no way hinges upon or is affected by the outcome of the criminal proceedings.

Possibly the government's stated understanding is correct.[2] However, the terms employed by the Judicial Inquiry Officer in characterizing Vice–Dean Bellace's initiation of disciplinary proceedings—"[t]he complainant ... is basing her complaint on your conviction"—offer scant support for the proposition that the "outcome [of the University's disciplinary proceedings] in no way hinges upon or is affected by the outcome of the criminal conviction." Since the record before me does not show that the University has altered the stance reflected in Judicial Inquiry Officer Goodman's letter to Mr. Moskovits of November 29, 1990, I think I must take the University at its then word. That is to say, I think I am obligated to accept as an undisputed datum that Mr. Moskovits' conviction in 1988—a conviction affirmed in 1989—triggered the University's complaint in 1990. With that as a premise I also think that I am obligated to presume that whether Mr. Moskovits is convicted at his upcoming trial is likely to affect the University's posture with respect to pressing charges against Mr. Moskovits.[3]

With matters in this posture, the question I must ask myself is not whether, if I preside at the retrial of Mr. Moskovits, I will do so impartially. The question that the governing statute requires me to answer is whether—taking as one's instrument of observation and assessment not *my* perspective but the perspective of an objective external observer who is not acquainted with me but is acquainted with the record facts recited above—my "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Framing the question that way, the answer to which I am led is that my close association with the

---

1. Ms. Moskovits also relies on investigative documents antecedent to his being indicted as showing that the University was in some sense the instigator of the federal investigation that led to his being charged. The documents have apparently been known to Mr. Moskovits since 1988; in any event, their import is trivial. Likewise trivial is Mr. Moskovits' concern about the fact that in 1993–94 Vice–Dean Bellace and I served as members of a University committee (the Commission on Strengthening the Community) which, *inter alia,* reviewed certain aspects of the University's codes of student conduct.

2. It appears that government counsel, Assistant United States Attorney Kristin R. Hayes, was so advised just a few weeks ago in a conversation with Neil Hamburg, Esq. Letter from Kristin R. Hayes, Esq., to the undersigned, dated July 26, 1994 (copied to Messrs. Moskovits and Restrepo). (Mr. Hamburg was, until very recently, Associate General Counsel of the University).

3. The record before me is silent as to whether, following Judicial Inquiry Officer Goodman's November 29, 1990 letter to Mr. Moskovits, any further steps in the University disciplinary process have been taken by the University or by Mr. Moskovits.

University of Pennsylvania—an association of twenty years' standing—might reasonably be perceived by an objective external observer as a factor that could influence me, even if unconsciously, to favor a result that would facilitate achievement of the University's announced purpose to prosecute Mr. Moskovits for perceived infractions of a University code of conduct. In reaching this conclusion, I am influenced by the realization that the world at large does not hold public officials in uniformly high esteem—and citizen skepticism about officialdom even extends to judges. "The problem ... is that people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges. The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864–65, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855 (1988). Accordingly, I think it the better course not to preside at the retrial of Mr. Moskovits.[4] An order of disqualification accompanies this opinion.

---

**4.** I appreciate that, in removing myself, I am casting a substantial burden on whichever of my colleagues is assigned to conduct Mr. Moskovits' trial in my place. But the current version of § 455—revised in 1974, when § 455(a) was added—"had the effect of removing the so-called 'duty to sit' which had become an accepted gloss in the existing statute." *Liljeberg, supra*, 486 U.S. at 871, 108 S.Ct. at 2208 (Rehnquist, C.J., dissenting).

I should add that I am not persuaded that the motion to disqualify is untimely. Mr. Moskovits—representing himself—raised the issue after it became clear that there was to be a new trial. Furthermore, *it is not clear to me that the timeliness of the motion matters.* Whenever apprised of an arguably disqualifying circumstance a judge would appear obligated to consider § 455(a) whether or not a litigant makes a motion.