**UNITED STATES of America, Appellee,**

v.

**Terrence PENN, Defendant–Appellant.**

**No. 1389, Docket 91–1721.**

United States Court of Appeals,
Second Circuit.

Argued April 21, 1992.

Decided May 27, 1992.

Jonathan N. Halpern, Asst. U.S. Atty. New York City (Otto G. Obermaier, U.S. Atty. for the Southern Dist. of New York, Linda C. Severin, Asst. U.S. Atty., of counsel), for appellee.

Mark L. Amsterdam, New York City (Amsterdam & Lewinter, New York City, of counsel), for defendant-appellant.

Before: OAKES, Chief Judge, LUMBARD, and WALKER, Circuit Judges.

PER CURIAM:

Terrence Penn appeals from judgment imposed in the District Court for the Southern District of New York, Michael B. Mukasey, *Judge*, sentencing him to twenty-four months of incarceration to be followed by three years of supervised release for conviction after his guilty plea to a charge of extortion in violation of 18 U.S.C. § 1951. Penn challenges the court's application of the sentencing guideline for extortion, U.S.S.G. § 2B3.2, and contends that the court should have sentenced him under the guideline for blackmail, U.S.S.G. § 2B3.3. We affirm.

In January and February 1990, Terrence Penn, using the alias Raymond Fields, made several telephone calls to Carmine Elmore, the owner and operator of a service station in upper Manhattan. In these calls, Penn claimed to be an agent of the Immigration and Naturalization Service ("I.N.S."), and he told Elmore that an investigation turned up three aliens working at Elmore's station illegally. Penn emphasized the seriousness of the alleged crimes and asserted they could result in fines of $25,000 and a ten year prison sentence. Penn initially said he would overlook the violations if Elmore paid him $25,000, but he eventually reduced his demand to $1,000.

Penn resorted to a number of intimidating tactics. Penn arranged the phone calls to indicate that he had the service station under surveillance, and he asked questions showing knowledge of the internal operations of the station. He would become irate and abusive if Elmore failed to cooperate or tried to mislead him. In addition, he suggested that he was part of a larger criminal enterprise, and, in one phone call, he threatened to put Elmore 'out of business.' Elmore testified that he believed Penn was capable of physical bodily harm, and that he feared the station would be put out of business if Penn carried out his threats.

Elmore asked the F.B.I. to investigate Penn's conduct. When Robert Michael, one of Penn's associates, attempted to collect a $1,000 payment, the F.B.I. arrested him. Michael identified Penn, who was then arrested on September 27, 1990. On February 4, 1991, Penn pled guilty to extortion. Judge Mukasey sentenced him on November 22, 1991, to twenty-four months of incarceration, to be followed by three years of supervised release. Penn is now serving his sentence.

■ Penn claims it was error to sentence him under U.S.S.G. § 2B3.2, "Extortion by Force or Threat of Injury or Serious Damage," instead of U.S.S.G. § 2B3.3, "Blackmail and Similar Forms of Extortion." Application Note 2 for § 2B3.2 reads:

This guideline applies if there was any threat, express or implied, that reasonably could be interpreted as one to injure a person or physically damage property, *or any comparably serious threat, such as to drive an enterprise out of business.* Even if the threat does not in itself imply violence, the possibility of violence or serious adverse consequences may be inferred from the circumstances of the threat or the reputation of the person making it. *An ambiguous threat, such as "pay up or else," or a threat to cause labor problems, ordinarily should be treated under this section.* (Emphasis added).

*See also* U.S.S.G. § 1B1.7 (suggesting that courts look to guidelines' commentary as an indication of drafters' intent). The district court found that Penn's initial demand of $25,000, his intimidating tactics, and his implicit and explicit threats to put Elmore 'out of business' justified sentencing under this guideline.

■ Other courts have upheld broad interpretation of § 2B3.2 in cases involving threat of economic harm. *Cf. United States v. Bigelow,* 914 F.2d 966, 974 (7th Cir.1990) (suggesting expansive construction of section and application note). In *United States v. Williams,* 952 F.2d 1504, 1514 (6th Cir.1991), the court applied § 2B3.2 where "defendant's exploitation of the victims' fears was based on the implied threat that, unless payments were forthcoming, rezoning would never take place, and the victims would suffer a devastating economic loss." In *United States v. Hummer,* 916 F.2d 186, 194 (4th Cir.1990), the court found that § 2B3.2 applies to "threats to harm one or a few persons, to damage property, or to economically injure or ruin a business enterprise." *But see United States v. Inigo,* 925 F.2d 641, 659 (3rd Cir.1991) (rejecting use of section for blackmail that was not likely to threaten bankruptcy of victim, DuPont & Co.). Moreover, application of the section does not require any showing of intent or ability to carry out a threat. *See United States v. Rosen,* 896 F.2d 789, 791 (3rd Cir.1990).

There was ample evidence to justify Elmore's concern that Penn's threats, if carried out, might drive the service station out of business. In addition, the record clearly supports an inference that Penn sought to generate fear through physical intimidation and through explicit and implicit threats of serious economic injury. Thus, Penn's conduct fits squarely under § 2B3.2.

Affirmed.