

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-22-1996

# United States v. Boggi

Precedential or Non-Precedential:

Docket 95-1031

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"United States v. Boggi" (1996). *1996 Decisions.* Paper 250.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/250

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

3551

58102

109153


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 95-1031, 95-1109


UNITED STATES OF AMERICA
                              Appellant in No. 95-1109
              v.

ROBERT BOGGI,
                              Appellant in No. 95-1031


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 94-cr-00145)


Argued: October 10, 1995

Before:  STAPLETON, McKEE and NORRIS, Circuit Judges[2]

(Filed  January 22, 1996)


RONALD ERVAIS, ESQUIRE (ARGUED)
1315 Walnut Street, Suite 1329
Philadelphia, PA  19107

EDWARD V. SCHULGEN, ESQUIRE
121 South Broad Street, 17th Floor
Philadelphia, PA  19107

---

[2]      The Honorable William A. Norris, Senior Circuit Judge for
         the Ninth Circuit, sitting by designation.


1

Attorneys for Appellant, Cross-Appellee

MICHAEL R. STILES, ESQUIRE
United States Attorney
WALTER S. BATTY, ESQUIRE
Asst. United States Attorney, Chief of Appeals
ROBERT K. GORDON, ESQUIRE (ARGUED)
Asst. United States Attorney
615 Chestnut Street
Philadelphia, PA  19106
    Attorneys for Appellee, Cross-Appellant

OPINION OF THE COURT

McKEE, Circuit Judge.

This matter involves an appeal by Robert Boggi from a final judgment of conviction and sentence following a criminal jury trial in the United States District Court for the Eastern District of Pennsylvania, and a cross-appeal by the United States.  The Government challenges the district court's interpretation and application of the Sentencing Guidelines.  Although we find no merit to the trial errors alleged by Boggi and therefore will affirm the judgment of conviction, we conclude that the district court applied the incorrect Guideline provision in calculating Boggi's sentence.  Therefore, we will remand the matter to the district court with instructions to recalculate the sentence using the appropriate Guideline.

## I.  BACKGROUND FACTS AND PROCEDURAL HISTORY

From 1984 until his conviction in this case in 1994, Robert Boggi was the business agent for Philadelphia-based Local 1073 of

2

the United Brotherhood of Carpenters and Joiners of America ("UBC"). The UBC is an international union consisting of numerous affiliated local unions and district councils throughout the United States and Canada which represent carpenters and other types of skilled tradespersons. As business agent for Local 1073, Boggi was responsible for overseeing the daily operations of the union whose members were primarily engaged in residential carpentry. On May 6, 1994, a federal grand jury returned a superseding indictment against Boggi, charging him with exacting numerous illegal payments and gifts from contractors between 1984 and 1990. Specifically, Boggi was charged with one count of racketeering, in violation of 18 U.S.C. § 1962(c) (Count 1); three counts of unlawful receipt of money or a thing of value by a union official, in violation of 29 U.S.C. § 186 (Counts 2-4); and one count of extortion conspiracy, in violation of 18 U.S.C. § 1951 (Count 5). The indictment also sought the forfeiture of the racketeering proceeds pursuant to 18 U.S.C. § 1963 (Count 6).

On August 2, 1994, following a seven-day trial, the jury returned a guilty verdict on several of the RICO related offenses including racketeering, extortion, and extortion conspiracy. Thereafter, Boggi filed a motion for judgment of acquittal or, in the alternative, for a new trial. On December 29, 1994, the district court denied Boggi's motion, and on January 5, 1995, the district court sentenced Boggi to 48 months imprisonment. The district court ruled that U.S.S.G. § 2C1.1, which establishes penalties for extortion by public officials, was the applicable Guideline provision and sentenced Boggi accordingly. In doing

3

so, the court overruled the Government's argument that the applicable Guideline was U.S.S.G § 2B3.2. This appeal and cross appeal followed.

## II. DISCUSSION

### A.

Boggi alleges numerous trial errors. He complains that the district court improperly excluded certain evidence that would have established his reputation for good character, that the dates of the crimes charged were impermissibly vague, that the evidence was insufficient to support the verdict, and that the prosecution should have been barred by the statute of limitations. The district court carefully, and correctly evaluated each of these claims in the Memorandum Opinion it filed in support of its denial of Boggi's post-verdict motion for acquittal, and we need not reexamine these issues here.

We focus our attention instead on the Government's cross-appeal which challenges the district court's interpretation and application of the Sentencing Guidelines. The Government argues that the district court improperly applied § 2C1.1 of the Sentencing Guidelines to Boggi's extortion offenses and that the applicable Guideline was § 2B3.2.

The district court applied the Guideline manual effective November 1, 1989 because the last offense charged was in 1990, and the court's application of the 1989 version of the Guidelines is not contested. In order to appreciate the impact of the sentencing error alleged by the Government, it is necessary to first review how the district court calculated the sentence it

4

imposed.  The court first separated the counts of conviction into three groups of closely related counts pursuant to U.S.S.G. §3D1.2.  Group One consisted of most of the racketeering acts, which constituted Taft-Hartley Act violations including the receipt of payments from Samuel Kaufman, a business man who ran a company that did carpentry contracting and frequently hired non-union workers.  Group Two consisted of racketeering acts arising from payments the Property Corporation of America ("PCA") made in order to avoid picketing at the Polo Run apartment development where certain contracts had been awarded to non-union workers. Group Three consisted of racketeering acts arising from payments received from Al Bienenfeld, owner of Leslie Homes, Inc., a residential real estate development company, in connection with work being done by non-union workers at a condominium development.

Section 2E1.1 of the Guidelines assigns a RICO violation the greater of a base offense level of 19 or the offense level of the underlying racketeering acts.  In order to determine the sentence it was therefore necessary for the district court to calculate the offense level of the underlying racketeering activity, then compare the result with the alternative minimum base offense level applicable to RICO.

The court applied § 2E5.6 to Group One and determined that the base offense level was 10.[3]  The court then added two levels for abuse of a position of trust (§ 3B1.1), three levels

_____

[3] A subsequent amendment to the Guidelines deleted § 2E5.6 by consolidating it with § 2E5.1, effective November 1, 1993.

corresponding to the value of cash and goods received by Boggi (§ 2F1.1), and two more levels for obstruction of justice (§ 3C1.1), bringing the total offense level for Group One to 17. App. at 1302-08.

The court applied § 2C1.1 to the offenses in Group Two, which included the PCA payments. In doing so, the court rejected the recommendation of the presentence investigation and the Government, as they both recommended that the court apply § 2B3.2 to this Group of offenses. Section 2C1.1 yielded a base offense level of 10. The court applied a five-level increase corresponding to the amount of money extorted (§ 2F1.1), a two-level increase for abuse of a position of trust (§ 3B1.1), and a two-level increase for obstruction of justice (§ 3C1.1), bringing the total offense level for Group Two to 19. App. at 1309.

The court also applied § 2C1.1 to Group Three which included the payments from Al Bienenfeld. That Guideline resulted in a base offense level of 10. The court then applied a one-level increase corresponding to the amount of the extortionate payment (§ 2F1.1), a two-level increase for abuse of a position of trust (§ 3B1.1), and a two-level increase for obstruction of justice (§ 3C1.1), bringing the total offense level for Group Three to 15. App. at 1313.

The rules for combining the offense levels of the three groups, set forth at § 3D1.4, yielded a combined offense level of 22. App. at 1314. Applying the alternative minimum base offense level of 19, see § 2E1.1(a), to the RICO offenses yielded a total offense level of 23, after two levels each were added for abuse

6

of a position of trust (§ 3B1.1) and obstruction of justice (§ 3C1.1). App. at 1314. Because the minimum base level of 19 yielded the greater total offense level (23 instead of 22), the court sentenced Boggi based upon that calculation. Thus, the court concluded that the total offense level was 23 and the Guideline imprisonment range was 46-57 months. App. at 1314. The court sentenced Boggi to 48 months imprisonment. App. at 1345.

By contrast, had § 2B3.2 been applied, the Guideline calculations would have been as follows: The total offense level for Group One remains at level 17; Group Two becomes a total offense level of 23 (base offense level 18, plus one-level corresponding to the amount of the extortion as per § 2B3.1, plus two-levels for abuse of a position of trust, plus two-levels for obstruction of justice); Group Three becomes a total offense level of 22 (same as Group Two except that the amount of money extorted results in no increase). Under the rules for combining the groups set forth at § 3D1.4, the combined offense level becomes 26 (which is higher than the alternative minimum RICO calculation of 23), corresponding to 63-78 months imprisonment, which is, at a minimum, 15 more months imprisonment than the 48 months to which Boggi was sentenced under the district court's calculation.

When the district court decided to apply § 2C1.1 to the extortion offenses (Groups Two and Three) rather than § 2B3.2, the Government objected based upon the relevant Guideline commentary which instructs that § 2B3.2 should ordinarily be

7

applied to a threat to cause labor problems.  See USSG § 2B3.2,

comment. (n.2).  The district judge then responded:

> Yeah, but that's ordinarily.  This is
> different than ordinarily because it seems to
> me that the threat and the bodily -- there
> was no bodily injury.  There certainly wasn't
> any serious bodily injury.  There was -- no
> one's ever argued there was permanent or
> life-threatening bodily injury.

App. at 1311.  The Government further argued that § 2C1.1 was

clearly inapplicable because, by its terms, it addressed public

officials acting under official right, whereas Boggi was a

private union officer.   App. at 1312.

Our analysis of the appropriate Guideline to be applied here

must, of course, begin with the text of the Guidelines in

question.  Section 2C1.1, the Guideline applied by the district

court, states in part:

> Offering, Giving, Soliciting, or Receiving a Bribe;
> Extortion Under Color of Official Right
>
> (a)  Base Offense Level: 10
>
> (b)  Specific Offense Characteristics
>
>     (1)  If the offense involved more than one    bribe or extortion,
>
>     (2)  (If more than one applies, use the       greater):
>
>         (A)  If the value of the payment,  the benefit received or t
>         increase by the corresponding
>         number of levels from the table in
>         § 2F1.1 (Fraud and Deceit).
>
>         (B)  If the offense involved a    payment for the purpose o

USSG § 2C1.1.

By comparison, § 2B3.2, entitled "Extortion by Force or

Threat of Injury or Serious Damage," states in relevant part:

> (a)  Base Offense Level: 18

8

(b)    Specific Offense Characteristics

    (1)    If the offense involved an express or    implied threat of de

    (2)    If the greater of the amount demanded or the loss to the victim exceeded $10,000, increase by the corresponding number of levels from the table in § 2B3.1(b)(6).

    (3)    . . .

        (B)    If the offense involved preparation to carry out a threat of (i) death, (ii) serious bodily injury, (iii) kidnapping, or (iv) product tampering; or if the participant(s) otherwise demonstrated the ability to carry out such a threat, increase by 3 levels.

USSG § 2B3.2.

Because neither the text of § 2C1.1 nor § 2B3.2 mentions union officials or labor disputes per se, we will look to the application notes and commentary for instruction on which of these two Guidelines should be applied under the facts before us. See United States v. Bierley, 922 F.2d 1061, 1066 (3d Cir. 1990). The "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, __ U.S. __, 113 S. Ct. 1913, 1915 (1993). A court's "[f]ailure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to reversal on appeal." USSG § 1B1.7.

According to the background commentary, § 2C1.1 "applies to a person who offers or gives a bribe for a corrupt purpose, such

9

as inducing a public official to participate in a fraud or to influence his official actions, or to a public official who solicits or accepts such a bribe." USSG § 2C1.1, comment. (backg'd.). The background commentary further instructs:

> Section 2C1.1 also applies to <u>extortion by officers or employees of the United States</u> in violation of 18 U.S.C. § 872, <u>and Hobbs Act extortion, or attempted extortion, under color of official right</u>, in violation of 18 U.S.C. § 1951. The Hobbs Act, 18 U.S.C. §1951(b)(2), applies in part to any person who acts "under color of official right." This statute applies to extortionate conduct by, among others, officials and employees of state and local governments. The panoply of conduct that may be prosecuted under the Hobbs Act varies from a city building inspector who demands a small amount of money from the owner of an apartment building to ignore code violations to a state court judge who extracts substantial interest-free loans from attorneys who have cases pending in his court.

<u>Id.</u> (emphasis added).

The commentary to § 2B3.2, the provision which the Government argues should have been applied, states:

> This guideline applies if there was any threat, express or implied, that reasonably could be interpreted as one to injure a person or physically damage property, or any comparably serious threat, such as to drive an enterprise out of business. <u>Even if the threat does not in itself imply violence,</u> the possibility of violence or serious adverse consequences may be inferred from the circumstances of the threat or the reputation of the person making it. An ambiguous threat, such as "pay up or else," or <u>a threat to cause labor problems, ordinarily should be treated under this section.</u>

USSG § 2B3.2, comment. (n.2) (emphasis added).

10

It is therefore clear from the relevant commentary that §2B3.2 does not require the threat of serious bodily injury for its application. There is evidence regarding Boggi's actions as a union agent and his threats to cause labor problems which would support the application of § 2B3.2. Although we have not previously reviewed a district court's construction and application of § 2B3.2 in the labor union context, other courts of appeals have, and our conclusion here is consistent with the reasoning of those courts.

In United States v. Penn, 966 F.2d 55 (2d Cir. 1992), the Court of Appeals for the Second Circuit upheld a district court's sentence under § 2B3.2 following the defendant's guilty plea to a charge of extortion. The court rejected the defendant's arguments that he should have been sentenced under the more lenient provisions of § 2B3.3 which addresses "Blackmail and Similar Forms of Extortion." There, the defendant, Terrance Penn, had posed as an INS agent and threatened to shut down a service station that employed illegal aliens unless the owner of the service station acceded to Penn's demand of a cash payment. The service station owner "testified that he believed Penn was capable of physical bodily harm, and that he feared the station would be put out of business if Penn carried out his threats." Id. The district court found that Penn's initial demand for cash, his intimidating tactics, and his implicit and explicit threats to put the service station owner out of business justified sentencing under § 2B3.2. Id. The court of appeals affirmed saying: "the record clearly supports an inference that

11

Penn sought to generate fear through physical intimidation and through explicit and implicit threats of serious economic injury. Thus, Penn's conduct fits squarely under § 2B3.2." Id. at 57.

In United States v. Williams, 952 F.2d 1504 (6th Cir. 1991), the court of appeals found no error in the district court's application of § 2B3.2 in sentencing a defendant on extortion offenses where the "defendant's exploitation of the victims' fears was based on the implied threat that, unless payments were forthcoming, . . . the victims would suffer a devastating economic loss." Id. at 1514. Although the defendant in Williams argued for the application of § 2C1.1 as an alternative, the court rejected this argument, explaining:

> Section 2C1.1 is designed for the punishment of a person who bribes a public official or 'a public official who solicits or accepts such a bribe.' USSG § 2C1.1, comment. (backg'd.). Defendant, however, was not a public official, and [the] Sheriff . . ., whose political force was the weapon employed by defendant, was to be bribed in a matter not involving his official actions . . . .

Id. Thus, the court concluded that "the implicit threats employed by the defendant bring his case within the ambit of section 2B3.2." Id. The court further concluded that "the fact that neither defendant nor his shadowy counterpart, [the] Sheriff . . ., were to take any official action in exchange for a bribe tends to take this case out of the operation of section 2C1.1." Id. See also United States v. Hummer, 916 F.2d 186, 194 (4th Cir. 1990) (observing that from the language of § 2B3.2's commentary note 2 "a reasonable inference can be drawn that the Commission contemplated extortion threats to harm one or a few

12

persons, to damage property, or to economically injure or ruin a business enterprise").

Here, as in Williams, the district court had no sound basis for treating Boggi's extortion offenses as bribes, and sentencing Boggi under the Guideline provision directed at bribery involving public officials. Boggi was not a public official and he did not accept money in exchange for action involving any official duties. Although Boggi did violate a position of trust as he violated the trust that his union members had placed in him, such a breach occurs whenever a union official engages in extortion. The comments to § 2B3.2 clearly establish that the Sentencing Commission did not intend that such breaches would be treated the same as a public official who violates the public's trust. Similarly, the commentary establishes that the Commission did not intend that a sentencing court would require that extortionate threats be accompanied with threats of serious bodily injury before they would fall within the scope of § 2B3.2. Here, the Government established Boggi's blatant "threat[s] to cause labor problems" and that conduct falls within the parameters of §2B3.2.

The evidence would support a finding that Boggi used explicit and implicit threats of labor strikes and labor unrest that would result in economic injury, or ruin, for a given project. PCA and Bienenfeld both acquiesced in Boggi's demands so that Boggi would not use his position with the labor union to inflict serious economic harm. Bienenfeld testified that if Boggi had ordered the union carpenters to leave the construction site leaving only the non-union workers, the disruption of work

13

would have caused Bienenfeld's lender to foreclose and revoke a $10 million loan within a matter of hours. App. at 861-62. Similarly, Dean Wilson, a partner in PCA, testified that he and the other partners were personally liable for $12 million and that a picket line by Boggi's union could have spelled disaster for the project. App. at 168-73. Boggi's threats were also taken seriously by James Bormann, the superintendent at Polo Run. Bormann testified that Boggi always behaved in an intimidating manner and would generally conclude his visits to Polo Run by vowing to "take his business to the streets." App. at 186-87. Boggi's behavior caused Bormann to hire additional security at Polo Run, erect fences at the work site, and vary his commuting route. App. at 94, 186. Thus, Bormann's testimony would support a finding that Boggi had used threats of physical injury. Otherwise there would have been no reason for Bormann to vary his route to and from the construction site. However, Boggi's threats also included an unmistakable threat to cause economic harm to the projects and persons involved. Should the district court on remand find that Boggi's threats to cause labor problems had explicitly or implicitly involved threats either of physical injury or of complete economic ruin, § 2B3.2 would anticipate and encompass precisely this sort of conduct. See § 2B3.2, comment. (n.2) ("Even if the threat does not in itself imply violence, the possibility of violence or serious adverse consequences may be inferred from the circumstances of the threat or the reputation of the person making it.").

Our decision in United States v. Inigo, 925 F.2d 641 (3d Cir. 1991), is not to the contrary. In Inigo, we addressed whether § 2B3.2 or § 2B3.3 (the blackmail Guideline) applies to a Hobbs Act conviction involving commercial extortion. The defendant in Inigo had threatened to set up a manufacturing plant based on trade secrets stolen from the DuPont company unless he was paid $10 million. The district court applied the extortion provision, § 2B3.2, to the blackmail offense. We held that §2B3.2 had been misapplied and that § 2B3.3, the blackmail provision, was the applicable Guideline. In so holding, we explained:

> Both the blackmail and extortion section talk about a demand for money. The difference between them lies in the kind of harm threatened. We hold that the extortion section requires either a physical threat or an economic threat so severe as to threaten the existence of the victim. No such threat was made in this case.

Id. at 659. The district court may properly find on this record, however, that Boggi used just this type of threat in threatening the economic existence of PCA and the economic ruin of Bienenfeld.

Inigo does not control here because the commentary to §2B3.2 specifically states that a court should ordinarily apply that Guideline to threats, such as Boggi's, "to cause labor problems." Indeed, any other interpretation would run afoul of Stinson's holding that the Guidelines commentary is authoritative except in very narrowly prescribed circumstances, none of which is present here. See Stinson, 113 S. Ct. at 1915. If the district court

15

finds, however, that no victim could reasonably have interpreted one of Boggi's threats "as one to injure a person or physically damage property, or any comparably serious threat, such as to drive an enterprise out of business," § 2B3.2, comment. (n.2), then the court may sentence Boggi pursuant to §2B3.3.

Although it is not clear from the record whether § 2B3.2 or § 2B3.3 is appropriate here, it is quite clear that § 2C1.1 is inapplicable to this case. Section 2C1.1 has consistently been applied to bribery or extortion involving public officials in this circuit. In United States v. Badaracco, 954 F.2d 928 (3d Cir. 1992), the defendant pled guilty to four counts of defrauding a bank of which he was an officer and urged the district court to use the "value of the benefit received" formula set forth in § 2C1.1 to calculate the loss attributable to his fraud. Id. at 936. We held that the district court properly declined to do so, and in so holding we explained that "[s]ection 2C1.1 deals with the bribery of public officials or extortion under color of official right and is inapplicable to this case." Id. at 936 n.8. Also, in United States v. Schweitzer, 5 F.2d 44 (3d Cir. 1993), we found no problem with the district court's application of § 2C1.1 where the defendant pled guilty to conspiracy to bribe a public official to obtain confidential information held by the Social Security Administration. However, we remanded for resentencing because the district court cited an inappropriate factor to justify its upward departure from the sentence recommended by § 2C1.1. Id. at 47–48.

16

In sum, the district court erroneously applied § 2C1.1 in fashioning Boggi's sentence. At resentencing, the district court must make the necessary factual findings to determine whether §2B3.2 or § 2B3.3 is the appropriate Guideline. If the court finds that a victim could reasonably have interpreted Boggi's threats to cause labor problems as express or implied threats of violence to person or property, or of economic harm so severe as to threaten the existence of the victim, then the district court may resentence Boggi pursuant to § 2B3.2. If, however, the court finds that there was clearly no such threat of violence or economic ruin, then it may properly apply § 2B3.3.

**B.**

In his reply to the Government's cross-appeal, Boggi presents two arguments which he raises here for the first time. First, Boggi argues that the district court erred in finding that he abused a position of trust in committing the offenses and in adding a corresponding two-level increase pursuant to § 3B1.3 in each of the three offense groups. Second, Boggi contends that the district court erred in concluding that he perjured himself at trial and therefore was subject to a two-point adjustment for obstruction of justice pursuant to § 3C1.1.

"As a general matter, the courts of appeals will not consider arguments raised on appeal for the first time in a reply brief." Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 204–05 n.29 (3d Cir. 1990). We follow this rule so that appellees are not prejudiced by the lack of an opportunity to respond to issues raised for the first time in an appellant's reply brief.

17

See <u>Wright v. Holbrook</u>, 794 F.2d 1152, 1156 (3d Cir. 1986). However, because of the cross-appeal in this case, the Government has had an opportunity to respond to the arguments raised in Boggi's reply brief. Furthermore, Boggi's second argument raises a question which we feel requires clarification in this circuit. Therefore, we deviate from the general rule primarily to address this question. Before doing so, however, we will briefly address Boggi's first argument.

The district court's determination that Boggi abused his position of trust in the union is subject to review for clear error. <u>See</u> <u>United States v. Craddock</u>, 993 F.2d 338, 340 (3d Cir. 1993). The district court determined that, "as a Business Agent of the Metropolitan District Council and also as an officer of Local 1073, [Boggi] was in a position of trust with regard to the union members who elected him to represent their interests." App. at 1303-04. The evidence established that Boggi's union position was central to his commission of the offenses proved at trial, and we therefore cannot say that the district court's finding was clearly erroneous. The jury's finding that Boggi conducted and participated in the affairs of the union through a pattern of racketeering activity and betrayed the union membership to enrich himself provides ample support for the district court's upward departure. We conclude that the district court properly increased Boggi's offense level by two points for abuse of a position of trust.

The district court's determination that Boggi perjured himself at trial is also subject to review for clear error. <u>See</u>

United States v. Cusumano, 943 F.2d 305, 315 (3d Cir. 1991), cert. denied, __ U.S. ___, 112 S. Ct. 881 (1992). Boggi argues that under Dunnigan v. United States, __ U.S.__, 113 S. Ct. 1111 (1993), sentence enhancement for obstruction of justice is appropriate only after there has been a review of the evidence and a specific finding that there was a "willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition . . . ." Id. at 1117. Boggi contends that the district court failed to make the requisite independent finding. We disagree.

The district court found that Boggi perjured himself at trial, observing: "I don't see how, in view of his flat denials and the jury's conviction, that you can find otherwise than that he testified falsely on the stand. That being the case, I feel I'm obliged to add the two levels." App. at 1305. The issue posed to the jury, *inter alia*, was whether Boggi was guilty of the extortion offenses charged. The jury listened to testimony including Boggi's testimony that he was innocent, evaluated the credibility of the witnesses, and weighed the evidence. In convicting Boggi, the jury necessarily rejected his testimony that he was innocent of the extortion offenses charged. In sentencing Boggi, the district properly considered this fact and properly reasoned that "a guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in the verdict." United States v. Weston, 960 F.2d 212, 218 (1st Cir. 1992). Cf. Barber v. CSX Distrib. Servs., 68 F.3d 694, 700 (3d Cir. 1995).

19

Although Dunnigan states that "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding," 113 S. Ct. at 1117, express separate findings are not required. See id. ("The district court's determination that enhancement is required is sufficient . . . if . . . the court makes a finding that encompasses all of the factual predicates for a finding of perjury."); United States v. Matiz, 14 F.3d 79, 84 (1st Cir. 1994). Here, the district court's determination that Boggi perjured himself at trial encompassed all of the elements of perjury -- falsity, materiality, and willfulness -- and therefore, was sufficient under Dunnigan. This is demonstrated by the district court's characterization of Boggi's testimony as "flat denials," which certainly suggests that the district court believed that Boggi provided false testimony with willful intent, "rather than as a result of confusion, mistake or faulty memory." Id. at 1116. While the district court was not explicit about the materiality of Boggi's denials, the record reflects that Boggi's false testimony denying acceptance or extortion of money and other things of value from any of the contractors, App. at 1118-19, was necessarily material. If the jury had believed Boggi's testimony and disbelieved some or all of the other witnesses who offered conflicting testimony, then Boggi would not have been convicted. This determination of materiality is implicit in the district court's reasoning and is clear from our independent review of the record. See United States v. Tracy, 36 F.3d 199, 203 (1st Cir. 1994) ("On review, the appeals court must be able to ascertain

20

the ultimate finding and there must be evidence (regardless of whether it has been specifically identified by the district judge) that would permit a reasonable fact finder to make such a determination . . . .), cert. denied, 115 S. Ct. 609 (1994). Therefore, we conclude that the district court did not err in finding that Boggi perjured himself and enhancing his sentence accordingly.  Cf. United States v. Webster, 54 F.3d 1, 8-9 (1st Cir. 1995); United States v. Rodriguez, 995 F.2d 776, 779 (7th Cir. 1993).  In doing so, however, we stress that it is preferable for a district court to specifically state its findings as to the elements of perjury on the record when applying this enhancement.  However, where, as here, the record establishes that the district court's application of the enhancement necessarily included a finding as to the elements of perjury, and those findings are supported by the record, we will not remand merely because the district court failed to engage in a ritualistic exercise and state the obvious for the record.

Finally, Boggi claims that the sentence enhancement for perjury effectively penalized him for exercising his right to testify in his own behalf.  This claim, however, was rejected by the Supreme Court in Dunnigan, 113 S. Ct. at 1117, where the Court reiterated that "a defendant's right to testify does not include a right to commit perjury."  Thus, we find this claim to be without merit.

### III.  CONCLUSION

21

For the foregoing reasons, we will affirm the judgment of conviction but the judgment of sentence will be vacated and the case remanded for resentencing in a manner consistent with this opinion.