NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4475
_____

UNITED STATES OF AMERICA

v.

THOMAS D. TUKA,

Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-11-cr-00134-001
District Judge: The Honorable Terrence F. McVerry

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 19, 2016

Before: SMITH, HARDIMAN, and SHWARTZ, *Circuit Judges*

(Filed: June 14, 2016)
_____

OPINION*
_____

SMITH, *Circuit Judge.*

    In this appeal, Defendant-Appellant Thomas Tuka challenges his convictions

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

and subsequent sentencing for multiple counts of tax evasion, in violation of 26 U.S.C. § 7201, and multiple counts of willful failure to file tax returns, in violation of 26 U.S.C. § 7203. For the reasons stated below, we will affirm.

## I.

Though Tuka denies it, he is – by all accounts – a tax protestor. Nevertheless, he apparently was not always a tax protestor; he filed tax returns and paid any taxes due as required by law for at least the several years preceding the events underlying his convictions. After Tuka became disabled and was unable to perform his duties as a commercial airline pilot for U.S. Airways in 1996, he began receiving disability benefits under the U.S. Air Pilot Disability Plan. Because U.S. Airways treated the disability benefits as taxable income, the plan administrator withheld taxes from these payments pursuant to Tuka's then-current Form W-4. In 1996, Tuka filed a tax return.

Beginning in 1997, Tuka became convinced that federal taxes were "unconstitutional," and instructed the plan administrator, from that point forward, to cease withholding taxes from his disability payments. Around this time, and through at least 2010, Tuka also began expressing his view that taxes were unconstitutional to numerous individuals.

Then, in 1998, after learning of a provision in the tax code allowing taxpayers to file amended returns for past years, Tuka asked his tax advisor at

H&R Block to help him fill out amended returns for tax years 1996 and 1997. He did so in order to try to recover the taxes paid on his disability benefits for those years. After some urging by Tuka, the tax advisor agreed to prepare the amended returns along with a statement requesting a ruling from the Internal Revenue Service on whether Tuka's disability benefits were taxable income. Shortly after Tuka submitted these documents, the IRS sent Tuka a check for roughly $14,000 as a partial refund of his tax liability for 1996; the IRS did not issue any refund for 1997.

When Tuka filed a return for tax year 1999, he omitted his disability benefits from his calculation of taxable income, leading the IRS to issue to Tuka a notice of deficiency. Tuka challenged this notice in the United States Tax Court, arguing that his disability benefits were tax-exempt. In a January 2003 written opinion the Tax Court ruled against Tuka, concluding that his disability benefits were indeed taxable income. This Court summarily affirmed. *See Tuka v. Comm'r of Internal Revenue*, 120 T.C. 1, *aff'd* 85 F. App'x 875 (3d Cir. 2003).

Beginning with tax year 2000, Tuka ceased submitting tax returns altogether, including for the years after he lost the above-referenced Tax Court case and appeal. He also left in place his instructions to the plan administrator to not withhold taxes from his disability benefits, and, in 2005, when a different company assumed responsibility for administering the plan, he sent the new

administrator written instructions to the same effect. At all times relevant to this appeal the plan administrators complied with Tuka's instructions.

A grand jury indicted Tuka on four counts of felony tax evasion (one for each tax year between 2003 and 2006) and three counts of misdemeanor willful failure to file a return (one for each tax year between 2006 and 2008). Following trial in January 2013, a jury convicted Tuka on all counts. At sentencing, the District Court increased Tuka's Sentencing Guidelines range under U.S.S.G. § 3C1.1 after finding that Tuka willfully attempted to obstruct justice by perjuring himself at trial. The court then sentenced Tuka to thirty months in prison followed by three years of supervised release. This timely appeal followed.[1]

## II.

On appeal, Tuka raises two claims for our review. First, he claims that the government presented insufficient evidence at trial to sustain the jury's verdict on any of his tax evasion and failure-to-file charges. Second, he argues that the District Court erred in applying the sentencing enhancement for perjury under U.S.S.G. § 3C1.1. We will address each argument in turn.

## A.

When reviewing the sufficiency of the evidence to sustain a conviction,

---

[1] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

"[w]e review the evidence in the light most favorable to the government." *United States v. McKee*, 506 F.3d 225, 232 (3d Cir. 2007). We will overturn a conviction for insufficient evidence only if no rational trier of fact could have found the defendant guilty beyond a reasonable doubt based on the evidence adduced at trial. *Id.*

In order to sustain Tuka's convictions for tax evasion under 26 U.S.C. § 7201, the government was required to prove three elements with respect to each of the tax years in question: "1) the existence of a tax deficiency, 2) an affirmative act constituting an attempt to evade or defeat payment of the tax, and 3) willfulness." *United States v. Farnsworth*, 456 F.3d 394, 401 (3d Cir. 2006) (internal quotation marks and citation omitted). Similarly, to convict Tuka for willful failure to file a tax return under 26 U.S.C. § 7203, the government had to prove, for each of the tax years in question, that: (1) Tuka was required to file a tax return, (2) he failed to do so, and (3) his failure was willful. *McKee*, 506 F.3d at 244.

Tuka concedes the first element as to each of his tax evasion convictions (i.e., that he owed taxes for each of the years in question), as well as the first two elements of his failure-to-file convictions (i.e., that he was required, and that he failed, to file a tax return), but claims that the government presented insufficient evidence that he willfully took affirmative steps to evade payment, and that his

failure to submit returns was willful. Tuka is wrong on all accounts.

"The definition of willfulness is the same under both felony (§ 7201) and misdemeanor (§ 7203) tax charges. . . . In both cases, willfulness may be inferred from a pattern of conduct, the likely effect of which would be to mislead or to conceal." *United States v. McGill*, 964 F.2d 222, 237 (3d Cir. 1992) (internal quotation marks and citations omitted). Furthermore, because "[e]vidence of affirmative acts may be used to show willfulness, and the defendant must commit the affirmative acts willfully to be convicted of tax evasion," we have noted that the willfulness and affirmative-act elements of tax evasion are "closely connected." *Id.* at 237-38 (internal quotation marks and citation omitted).

The government at trial presented more than enough evidence by which a rational trier of fact could have concluded that, for each of the years in question, Tuka willfully engaged in at least one overt act in an attempt to evade payment of taxes and that he willfully failed to file tax returns. We agree with the government that by affirmatively instructing the plan administrators to not withhold any taxes from his disability benefits and failing to rescind these instructions for each of the years in question, Tuka committed an overt act intended to evade the payment of taxes. *Cf. United States v. Connor*, 898 F.2d 942, 945 (3d Cir. 1990). Coupled with Tuka's knowledge of this Court's decision in 2003 affirming the Tax Court's determination that his disability benefits received in 1999 were taxable, a rational

6

juror could certainly conclude that Tuka knew he had a legal duty to file a return and to pay taxes for each of the years in question.

To counter the government's evidence, Tuka relies heavily on the fact that the IRS issued him a refund of his 1996 taxes after he filed an amended return along with a request for a ruling on the taxability of his disability benefits. Tuka argues now (as he did before the jury) that the refund constituted a ruling in his favor, and therefore that he had a good-faith belief that he was not required to pay taxes on his disability benefits. Obviously, the jury did not believe him, nor was it required to. After this Court in 2003 affirmed the Tax Court's decision that Tuka's disability benefits were taxable, any subjective belief that Tuka's disability benefits were not taxable became objectively unreasonable. And while an honestly held belief, regardless of its reasonableness, will still negate the element of willfulness in a tax prosecution such as this, the jury was free to infer from this unreasonableness that Tuka did not actually hold such a belief. *Cheek v. United States*, 498 U.S. 192, 203-04 (1991) ("[T]he more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge.").

Thus, we will uphold Tuka's convictions under 26 U.S.C. §§ 7201 and 7203.

**B.**

7

Tuka next contends that the District Court erred by increasing his offense level under the Guidelines by two levels for obstruction of justice under U.S.S.G. § 3C1.1. We review for clear error the District Court's factual finding of willful obstruction of justice. *United States v. Powell*, 113 F.3d 464, 467 (3d Cir. 1997).

Perjury is one form of obstruction of justice. *See* U.S.S.G. § 3C1.1 cmt. n.4(B). A defendant qualifies for the perjury enhancement by giving "false testimony concerning a material matter with the willful intent to provide false testimony . . . ." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). In assessing whether Tuka's testimony at trial satisfied the elements of perjury, the District Court was required "to accept the facts necessarily implicit in the verdict." *United States v. Boggi*, 74 F.3d 470, 478-79 (3d Cir. 1996) (internal quotation marks and citation omitted). And while "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding, express separate findings are not required." *Id.* at 479 (internal quotation marks and citation omitted).

One fact "necessarily implicit" in the jury's verdict is that Tuka did not have a good-faith belief that his disability benefits were not taxable, for if he did have such a belief, the jury would not have convicted him. Thus, his testimony asserting such a good-faith belief must have been false and material. *Cf. id.* (concluding that the defendant's testimony at trial "was necessarily material" because the jury

8

would not have convicted him if it had believed the testimony).  In explaining why it was applying the enhancement, the District Court stated, "I'm disappointed in you, Mr. Tuka, to have testified in the fashion that you did . . . .  I agree[ ] with th[e] finding [that you were not truthful]."  App. 597.  Though the court could have more clearly enunciated its findings as to each individual element, these statements sufficiently indicated that it thought Tuka's testimony satisfied these elements.  Thus, the court did not commit error, clear or otherwise, in applying the enhancement under § 3C1.1.

## III.

For the reasons stated above, we will affirm the judgment of the District Court.