**UNITED STATES of America**

v.

**Alexander Eugenio MOSKOVITS.**

**Crim. No. 87–284–01.**

United States District Court, E.D. Pennsylvania.

June 24, 1993.

Uristin Hayes, Asst. U.S. Atty., Philadelphia, PA, for U.S.

Scott Srebnick, Miami, FL, for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Having conducted an evidentiary hearing to resolve issues of material fact pertaining to defendant Alexander Moskovits' motion to vacate his judgment of conviction and sentence pursuant to 28 U.S.C. § 2255, I now conclude that Moskovits' trial was critically infected by unconstitutional error and that a new trial is in order.

What follows incorporates my findings of fact and conclusions of law.

I.

On February 12, 1993, I filed an opinion holding that defendant's § 2255 petition was not an abuse of the writ and ordering an evidentiary hearing to resolve various disputed factual issues raised by that petition. *United States v. Moskovits,* 815 F.Supp. 147 (E.D.Pa.1993). That opinion sets out in some detail the procedural history of this case, as well as the substance of Moskovits' § 2255 petition. Rather than repeat that detailed recital here, I will confine myself to setting forth the most salient aspects of this case's history.

In August 1991, I granted Moskovits' Rule 35/§ 2255 motion and vacated Moskovits' sentence. *See United States v. Moskovits,* 784 F.Supp. 183, 186 (E.D.Pa.1991). Moskovits' sentence had been enhanced on the basis of his prior conviction in Mexico, and I decided that Moskovits' trial counsel, Robert Simone, Esq., had provided constitutionally ineffective assistance of counsel during sentencing by failing to inquire into the validity of Moskovits' Mexico conviction (a conviction that, I concluded, was flawed, from an American due process perspective, for the reason that Moskovits had received no meaningful legal representation at critical stages of the proceedings). In the § 2255 petition presently before this court, Moskovits' principal contention—and the only issue on which an evidentiary hearing was ordered[1]—is that his trial counsel also provided ineffective assistance at trial by failing to inquire into the validity of the Mexican conviction before advising Moskovits that this conviction would more than likely be used for impeachment purposes if Moskovits testified.[2] In the February 1993 opinion ordering an evidentiary hearing, I first rejected the government's claim that Moskovits had abused the writ by

1. In his § 2255 petition, Moskovits argues also that he received ineffective assistance of counsel because (1) Mr. Simone failed to move for acquittal on certain counts purportedly brought in an improper venue; and (2) Mr. Simone failed to object to the use of allegedly perjurious testimony by a government witness. These contentions were not addressed in the government's reply or in the April 1993 evidentiary hearing, and, because Moskovits' petition will be granted based on trial counsel's deficient research and advice regarding the admissibility of Moskovits' Mexi-

can conviction, I need not—and do not—address the merits of these additional claims.

2. Moskovits also claims that his attorneys' advice, in addition to constituting ineffective assistance of counsel, deprived him of his constitutional right to testify. In my previous opinion, I indicated that this claimed infringement of the right to testify should be viewed as a species of a claim of ineffective assistance of counsel. *See* 815 F.Supp. at 153 n. 14. I remain of that view.

not including this challenge to the validity of his conviction in his previous motion brought pursuant to Rule 35 and § 2255. Then, I decided that Moskovits' ineffective assistance claim warranted an evidentiary hearing. Noting that it was well-settled at the time of the trial (1988) that a prior conviction obtained in violation of a defendant's due process rights cannot be used to impeach that defendant, *see Loper v. Beto,* 405 U.S. 473, 483, 92 S.Ct. 1014, 1019, 31 L.Ed.2d 374 (1972), I determined that Moskovits stated a claim of ineffective assistance of counsel at trial because Mr. Simone's asserted failure to pursue the issue of the validity of the Mexican conviction when advising Moskovits whether to testify was arguably no less egregious than his failure to research the validity of that conviction as a basis for sentence enhancement.

At the evidentiary hearing, which took place on April 12 and 13, 1993, the defense called two witnesses: (1) Milton Grusmark, Esq., Mr. Simone's co-counsel in the Moskovits trial, and (2) Mr. Moskovits himself. The government called one witness, Mr. Simone, and cross-examined both of the defense witnesses. What must now be decided is whether, at the evidentiary hearing in April, defendant satisfied his burden of establishing, by a preponderance of the evidence, that (1) counsel's failure to research the validity of the Mexican conviction and counsel's advice that the conviction would likely be used to impeach Moskovits "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 688, 687, 104 S.Ct. 2052, 2064, 2064, 80 L.Ed.2d 674 (1984). In the February opinion ordering an evidentiary hearing, I reasoned that *Strickland*'s prejudice prong broke down into two propositions, each of which Moskovits would have to establish at the evidentiary hearing: "(1) that if Moskovits had known that he could not be impeached with a prior conviction obtained without the assistance of counsel at critical phases of the proceeding, it is reasonably probable that he would have chosen to testify; and (2) that without his trial testimony, his trial was rendered unfair and the verdict rendered suspect." 815 F.Supp. at 154.

Therefore, what is now for me to address is: (1) whether counsel's failure to inquire into the admissibility of the Mexican conviction was constitutionally deficient; (2) whether it is reasonably probable that Moskovits would have testified but for this advice; and (3) whether Moskovits' failure to testify undermines confidence in the outcome of his trial.

## II.

### The Adequacy of Representation

■ The testimony adduced at the evidentiary hearing confirmed what Moskovits' attorneys had indicated previously in affidavits, *see e.g.,* Defendant's Mem. in Sup., Exh. B (Grusmark Aff.) at ¶ 4; 784 F.Supp. at 186: that Mr. Simone and Mr. Grusmark did not research the underlying circumstances of the Mexican conviction or the admissibility of that conviction, but rather assumed that the conviction was valid and admissible were Moskovits to take the stand. Specifically, Mr. Grusmark testified that although presented with a copy of the Mexican judgment of conviction prior to trial—a document which nowhere indicated that Moskovits had been represented by counsel—and although the government had intimated prior to trial that it might use the Mexican conviction to impeach Moskovits, he never investigated, prior to trial or during trial, whether Moskovits had in fact been represented by counsel during the Mexican proceedings. Nor did Moskovits' counsel file a motion contesting the admissibility of the Mexican conviction. Instead, Mr. Grusmark and Mr. Simone advised Moskovits that, if he testified, the jury would likely learn about his prior conviction and that this would imperil his defense.

In ruling on defendant's earlier challenge to his sentence, I was faced with a similar issue—whether the failure of Moskovits' counsel to research the validity of the Mexican conviction and to file a motion contesting its validity was objectively unreasonable, when that conviction was to be used as a basis for enhancing Moskovits' sentence. There, I concluded that Mr. Simone's failure to investigate the validity of the Mexican conviction and failure to file a relevant motion was "not compatible with minimal pro-

fessional standards" because "an attorney has an obligation, that cannot be avoided or delegated to others, to make sure when it comes to sentencing that the ingredients asserted by the government to be essential ingredients that call for sentence enhancement of a significant nature, are well-founded." *Moskovits*, 784 F.Supp. at 186. At the time of Moskovits' trial, it was settled that an uncounseled conviction cannot be used for sentence enhancement, *see United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), and it was equally well-settled that such a conviction cannot be used for impeachment, *see Loper, supra*. Further, an attorney has a responsibility, no less demanding than the aforementioned obligation to investigate the basis of a proposed sentence enhancement, to evaluate the admissibility of threatened impeachment material—especially impeachment evidence as critical as a prior conviction—so as to offer the defendant informed advice as to whether he or she should take the stand (as well as to insure that, if the defendant does take the stand, he or she is not impeached with inadmissible material). Therefore, on the face of things, it is difficult to see why, if counsel's failure to ascertain whether the Mexican conviction could be used for sentencing enhancement was an unprofessional error, the failure to investigate whether that conviction could be used for impeachment purposes did not also fall below an objective standard of reasonableness.

The government, while acknowledging that counsel's failure to research the validity of the Mexican conviction was error, offers two principal reasons why counsel's conduct was not an unprofessional error in the special *Strickland* sense. First, the government

points out that Moskovits, although he sensed that there was something wrong with the Mexican conviction[3] and knew before the trial that his conviction could be used against him, failed to volunteer relevant facts about the conviction that would have prompted his trial counsel to investigate those proceedings. Therefore, according to the government, "[i]t was not objectively unreasonable for trial counsel to not research the validity of the Mexican conviction when trial counsel had been given no information to suggest that a potential challenge existed." Government's Sup.Resp. at 6.[4]

Under *Strickland*, counsel has a "duty to make reasonable investigations." 466 U.S. at 691, 104 S.Ct. at 2066. What investigation decisions are reasonable, it is true, depends on the information supplied by the defendant.

> [W]hen the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions. . . .

*Id.* However, while an attorney is entitled to rely on the information provided to him by his client, nothing in *Strickland*, and no case cited by the government, implies that a lay defendant has an affirmative obligation to divine conceivable legal defenses and arguments and steer counsel down fruitful paths

---

3. For instance, at the sentencing hearing, Moskovits complained generally about the Mexican proceedings, and specifically about his treatment while in custody, and asked the court, for purposes of sentencing enhancement, to "put [the Mexican] conviction in question marks." *See* 784 F.Supp. at 185.

4. This argument presumably applies also to counsel's failure to investigate the Mexican conviction during sentencing. That is to say, at the sentencing phase, Mr. Simone had been given no more information indicating that a potential challenge to the Mexican conviction existed than

he had been given previous to or during the trial. Therefore, I suppose that the government, although it did not appeal the vacation of Moskovits' sentence, is now asking me in effect to reconsider that portion of my previous opinion finding that Mr. Simone acted unreasonably during sentencing by failing to investigate the validity of the Mexican conviction. Regardless, for the reasons set out in the text, I am convinced that it was proper not to excuse trial counsel's failure to act based on the fact that Moskovits did not, on his own, volunteer certain information.

by identifying relevant predicate information. Rather, included in the *attorney*'s duty to make reasonable investigations is the obligation to research possible legal bases for excluding harmful evidence and to elicit from the client the facts necessary to decide whether such a legal claim is available. Similarly, "it is the duty of counsel to present to [the accused] the relevant information on which he may make an intelligent decision [as to whether or not to take the stand]." *Poe v. United States,* 233 F.Supp. 173, 176 (D.D.C.1964) (Wright, J.), *aff'd* 352 F.2d 639 (D.C.Cir.1965). Here, counsel simply made no investigation into the relevant law or facts relating to the Mexican conviction, and that failure to act was not rendered reasonable by the client's failure to provide his own effective legal representation.

The government argues also that the ultimate advice to Moskovits that he not testify, even if motivated by the mistaken belief that the Mexican conviction would likely be used to impeach Moskovits, was reasonable because there were other good reasons for Moskovits not to testify. However, because we are interested in the representation that Moskovits actually received at his trial, what matters is the advice that he actually received, not *ex post* alternative rationalizations of that advice. *See Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066 (making clear that the reasonableness of counsel's challenged conduct must be "viewed as of the time of counsel's conduct"). The sole reason not to testify actually conveyed to Moskovits by his trial counsel was the likely admission of the Mexican conviction. *See infra* Section III, Part A. The specific, articulated rationale given to the client as to why he or she should not take the stand is significant because the client may decline to exercise the right to testify based on that reason alone (whereas the client might reject the advice were a

different reason given). That there may have been strong reasons beyond the reason presented to Moskovits for him not to testify might establish that the inferior advice he received did not prejudice his defense, *see infra* Section III, Part A; however, such other reasons—even assuming they exist—cannot render counsel's actual performance at trial constitutionally adequate.

Therefore, Moskovits has established by a preponderance of the evidence that he received unreasonably ineffective assistance of counsel at trial. We now consider whether Moskovits' defense was prejudiced by this ineffective assistance.

## III.

### Prejudice

■ To establish prejudice under *Strickland,* the party asserting the ineffective assistance claim must show that

> there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Accordingly, "[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2068–69. In this case, that question must be separated into two sub-questions: has Moskovits demonstrated a reasonable probability that: (1) he would have testified but for the erroneous advice concerning the admissibility of the Mexican conviction; and (2) had he testified, the result of the trial would have been different.[5]

---

**5.** The Court recently emphasized that the *Strickland* prejudice analysis must focus not simply on whether the outcome of the trial would have been different but for the counsel's behavior, but also on whether the result of the proceeding was rendered fundamentally unfair or unreliable by counsel's deficient performance. *See Lockhart v. Fretwell,* —— U.S. ——, ——–——, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993). Under

*Lockhart,* the fundamental fairness of the proceedings is measured by whether "the ineffectiveness of counsel ... deprive[s] the defendant of any substantive or procedural right to which the law entitles him." —— U.S. at ——, 113 S.Ct. at 844. This requirement that counsel's error affect, in addition to the judgment, defendant's discrete trial rights is met in the instant case because counsel's defective advice compromised

A. Whether Moskovits Would Have Testified But For the Defective Advice

At the evidentiary hearing, Moskovits stated that during his trial he told Mr. Grusmark and Mr. Simone that he wanted to testify. In his affidavit and again at the evidentiary hearing, Mr. Grusmark confirmed that Moskovits insisted on testifying on his behalf, but was advised otherwise. *See* Tr. 4/12/93 at 35. Mr. Simone and Mr. Grusmark stated at the hearing that their advice to Moskovits that he not testify was based solely on the fact that, if he did testify, the Mexican conviction would more than likely be used to impeach him. *See* Tr. 4/12/93 at 37, 152. The government, in its cross-examination of Mr. Grusmark and direct examination of Mr. Simone, attempted to elicit an acknowledgment that there were other reasons for Moskovits not to testify, such as concerns that Moskovits would not act well on the stand or would not be able to rebut any of the specific accusations against him. However, both witnesses emphasized that, as best as they could recall, these concerns did not figure into their recommendations. *See, e.g.,* Tr. 4/12/93 at 50, 55, 169–70. Moskovits, for his part, testified, as he did at his original sentencing in 1988, that he declined to take the stand only because he understood that the government wanted to,[6] and would be able to, introduce evidence of the Mexican conviction if he testified and that this admission would damage his defense. Taking into account trial counsel's description of the advice given to Moskovits when he expressed an interest in testifying and my observations of Moskovits' conduct during the trial and at various hearings since, I find credible Moskovits' frequently-repeated and well-pedigreed suggestion that he wanted to testify, but decided not to take the stand only because of the Mexican conviction.

In sum, I am persuaded that it is at least reasonably likely that, but for the erroneous advice concerning the admissibility of the Mexican conviction, Moskovits would have exercised his right to testify in his own defense.

B. The Effect of Defendant's Failure to Testify on the Reliability of the Trial Outcome

Because I am persuaded that Moskovits likely would have testified but for the deficient representation he received, the only question that remains is whether Moskovits has met the burden of showing that, without his testimony, the result of his trial was rendered fundamentally unfair or unreliable. As I said in the February opinion ordering an evidentiary hearing on this § 2255 petition, "[i]t seems to me a rare case in which a court can comfortably say that even though errors prevented defendant from testifying, the outcome of his trial was still fundamentally fair and the verdict not rendered suspect." 815 F.Supp. at 154. We judges properly view with skepticism our ability to conclude with any confidence in the average case that an error keeping a defendant from testifying did not likely affect the outcome of the trial, or did not render that trial unfair, because a defendant has a constitutional right to testify,[7] and it is the defendant "who above all others may be in a position to meet the prosecution's case." *Ferguson v. Georgia,* 365 U.S. 570, 582, 81 S.Ct. 756, 763, 5 L.Ed.2d 783 (1961); *see also Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961) ("The most persuasive

defendant's constitutional right to testify. *See infra.*

6. At the April evidentiary hearing, the government acknowledged that at various points before the trial it had raised the possibility that, should Moskovits testify, he would be impeached by his prior conviction. *See* Tr. 4/12/93 at 135.

7. *See Rock v. Arkansas,* 483 U.S. 44, 49, 51, 52, 107 S.Ct. 2704, 2708, 2709, 97 L.Ed.2d 37 (1987) ("[I]t can not be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense;" the right to testify "has sources in several provisions of the Constitution" and is "[e]ven more fundamental to a personal defense than the right of self-representation"); *Nix v. Whiteside,* 475 U.S. 157, 164, 106 S.Ct. 988, 993, 89 L.Ed.2d 123 (1986) (noting that a criminal defendant's due process right to testify in his own behalf "has long been assumed"); *Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975) ("It is now accepted ... that an accused has a right ... to testify on his own behalf."); *Brooks v. Tennessee,* 406 U.S. 605, 612, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358 (1972) ("Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right."); *United States v. DiSalvo,* 726 F.Supp. 596, 598 (E.D.Pa.1989).

counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself."); *Nichols v. Butler*, 953 F.2d 1550, 1553 (11th Cir.1992) ("The testimony of a criminal defendant at his own trial is unique and inherently significant."); *United States v. Walker*, 772 F.2d 1172, 1179 (5th Cir.1985) ("Where the very point of a trial is to determine whether an individual was involved in criminal activity, the testimony of the individual himself must be considered of prime importance."). Given its importance in the jurors' eyes, the testimony of the accused is not lightly dismissed as unimportant. When viewing Moskovits' testimony in light of the totality of evidence offered at trial, I am not persuaded that this is one of those rare cases in which this court can fairly say that it is not reasonably probable that the defendant's own testimony would have affected the verdict.[8]

The government's case against Moskovits, as I saw it develop during the three-week trial in June 1988, was strong. Each of five government witnesses described at some length the nature of his or her cocaine dealings with Moskovits. However, the government's case, marked by certain inconsistencies among the witnesses' accounts at significant points, was not so overwhelming as to render any contrary testimony inherently implausible. At the April evidentiary hearing, Moskovits advanced a range of testimony that was material and exculpatory (i.e. if believed, would have produced a different outcome) and that, even when measured against the powerful countervailing evidence presented by the government's witnesses at trial, the jurors reasonably could have believed—or at least accepted enough to shake their certainty in the honesty of the witnesses testifying against Moskovits.

Broadly speaking, Moskovits denied, among other things, (1) that he directed his girlfriends—who were, according to his description, independent women engaged in cocaine use and sales on their own—to (a) travel overseas and prepare shipments of cocaine into the United States or (b) engage in other drug-dealing activity; and (2) that he sold cocaine to David Savage in August 1986. The government argues that these "generalized denials" should be discredited because they are the sort of testimony rarely believed by jurors. It is true that a defendant's barren statement that he or she did not commit a particular charged act is less likely to convince a jury than a denial accompanied by a credible, alternative version of the events in question. However, I am not persuaded that Moskovits' denials, including those not amplified by specifics, are, as the government describes them, "incredible on their face." Government's Sup.Resp. at 16. First, it is important to remember that only a sample of Moskovits' testimony could be expected and was called for at the § 2255 evidentiary hearing. *See* Tr. 4/12/93 at 23 ("[T]he burden would be on Mr. Moskovits to show by a preponderance of the evidence ... in broad substance what his testimony would have been. I say in broad substance. I don't think detail is going to be central here."). When the government complains, for instance, that Moskovits never offered specifics about how he knew about the various trips made by his ex-girlfriend Lola Fulin if he did not direct those trips, the gov-

---

**8.** In this opinion, I operate on the assumption that Moskovits must demonstrate a "reasonable probability" that his trial verdict would have been different had he testified. However, it is certainly arguable that Moskovits' burden of proof on this prong of the prejudice inquiry should be softened somewhat to account for the fact that the deficient representation Moskovits received interfered with his fundamental right to testify. Courts have often presumed that errors depriving defendant of his or her right to testify affect the reliability of the result and warrant a new trial. *See, e.g., United States v. Butts*, 630 F.Supp. 1145, 1149 (D.Me.1986) ("[I]neffective assistance of counsel which results in a deprivation of the defendant's right to testify transcends conventional Sixth Amendment analysis and ... prejudice is sufficiently proven, if not to be presumed from, the resulting denial of the defendant's right to testify"). Such modification of the defendant's burden of proof may be seen as in harmony with the *Strickland* Court's observation that

> in adjudicating a claim of actual ineffectiveness of counsel, a court should keep in mind that the principles we have stated do not establish mechanical rules. Although those principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is challenged.

466 U.S. at 696, 104 S.Ct. at 2069.

ernment overlooks that Moskovits' failure to fill out the nuances of his testimony, standing alone, does not necessarily reflect the implausibility of that testimony rather than the limited confines of a § 2255 evidentiary hearing. Second, the government's case, lacking significant physical evidence of Moskovits' guilt on many of the counts, depended largely on the jury's accepting the testimony of government witnesses that Moskovits directed them to engage in cocaine distribution. In such a situation, defendant may not be able to do much more by way of specifics than deny that he exercised such dominion over the witnesses and explain his state of mind and conduct during the events in question (e.g. Moskovits' repeated suggestion at the hearing that he did not approve of the use of cocaine, consistently tried to discourage his independent-minded girlfriends from using drugs, and that, against his advice, they went on various drug-related trips). The fact that testimony with respect to issues of intent and motive frequently can be expected to come in "barebones" form does not itself establish that such testimony is unimportant, because its significance may lie in the defendant's taking the witness stand, looking the jurors in the eyes, and denying the government witnesses' characterization of the events on trial. *Cf. Wright v. Estelle,* 572 F.2d 1071, 1082 (5th Cir.1978) (Godbold, J., dissenting) (noting the possible importance of factors upon the jury such as "the defendant's willingness to mount the stand rather than avail himself of the shelter of the Fifth Amendment, his candor and courtesy (or lack of them), his persuasiveness, his respect for court processes."). For these reasons, while I agree that generalized denials are not particularly compelling, I decline to view them as inherently and invariably implausible.

That being said, if Moskovits' testimony consisted merely of so-called generalized denials, I would have serious reservations about ordering a new trial. However, Moskovits offered concrete, innocent explanations for a range of conduct portrayed as suspicious by the government at trial: for example, (1) Moskovits' ripping up Ms. Heidi Coleman's passport (Moskovits explained that he tore up her passport to protect her, *see* Tr.

4/13/93 at 12–13); (2) his father's giving $2,000 to Heidi Coleman in 1983 (Moskovits explained that the gift was to allow Coleman to travel to Mexico City to visit Moskovits, not to travel to Colombia to purchase drugs, *see* Tr. 4/13/93 at 11); (3) Moskovits' driving fancy cars around the University of Pennsylvania campus (Moskovits testified that those cars had been purchased with funds from his father, not with money made from selling cocaine, *see* Tr. 4/13/93 at 27, 107); and (4) the April 1985 incident at the Castle fraternity (Moskovits indicated that he went to the Castle fraternity to retrieve a package of cocaine at the request of his then girl-friend Tara Frayne to protect the intended recipient, Thomas Frayne (Tara Frayne's brother)—not with the intent to distribute that cocaine, *see* Tr. 4/13/93 at 73–5). Each of these pieces of testimony—although perhaps not strongly convincing—is credible in the sense that each admits that the events in question took place but offers an alternative version of the asserted or implied significance of those events. Moreover, if believed by the jury, such testimony—by explaining conduct appearing, in the face of silence, to link Moskovits with drug-related activities—might in the jury's mind have detracted substantially from the picture painted of Moskovits as directing large-scale distribution of cocaine.

In sum, Moskovits gave a sample of testimony, some of which included specific explanations as to why and how the government witnesses' testimony was inaccurate or misleading, that a jury might have believed and that has a reasonable tendency to induce reasonable doubts on the counts on which he was convicted. Evaluating whether testimony not presented at trial would have affected the outcome "is an exercise in prophecy in the subjunctive which is an extraordinarily difficult one, and one which ultimately must be recognized as not yielding to precision as the bottom line." *United States v. Friel,* 588 .F.Supp. 1173, 1186 (E.D.Pa.1984). I cannot say that I regard it as more likely than not that, had Moskovits testified, the jury would have acquitted him. However, the *Strickland* Court made it plain that the prejudice standard does not require a "more-likely-

than-not" demonstration. *See* 466 U.S. at 693–94, 104 S.Ct. at 2068. What I am persuaded of is that—given (1) the importance that a jury often attaches to a defendant's own testimony when he or she testifies as an alleged participant in the events on trial; and (2) the quantity and quality of the evidence produced against Moskovits at his trial—there is at least a reasonable likelihood that, had Moskovits testified, the jury would have had significant doubts respecting Moskovits' guilt on the counts on which he was convicted.

### IV.

#### Conclusion

For the reasons recited at length above, I conclude that the failure of Moskovits' trial counsel to research the law and facts pertaining to the Mexican conviction and counsel's erroneous advice concerning the admissibility of that conviction denied Moskovits reasonably effective assistance of counsel. Further, Moskovits has carried his burden of demonstrating that this deficient representation, which caused him not to exercise his fundamental right to testify, resulted in prejudice, meaning that "the decision reached would reasonably likely have been different absent the errors." *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069. Accordingly, I will vacate defendant Moskovits' conviction and sentence and set the matter for retrial.

#### *ORDER*

For the reasons given in the accompanying Memorandum, it is hereby ORDERED and DIRECTED that defendant Alexander Moskovits' motion and supplemental motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is GRANTED based on defendant Moskovits having received constitutionally ineffective assistance of counsel at trial, Moskovits' conviction and sentence are vacated, and defendant Moskovits is granted a new trial.