

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-25-1996

# United States v. Moskovits

Precedential or Non-Precedential:

Docket 94-1990,95-1048

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

## Recommended Citation

"United States v. Moskovits" (1996). *1996 Decisions.* Paper 162.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/162

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 94-1990 and 95-1048
_____

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ALEXANDER EUGENIO MOSKOVITS

Defendant-Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Crim. No. 87-284-01

Argued October 11, 1995

Before:  STAPLETON, McKEE, and NORRIS, Circuit Judges

(Opinion filed June 25, 1996)

L. Barrett Boss (Argued)
Asbill, Junkin & Myers, Chtd.
1615 New Hampshire Avenue, N.W.
Washington, D.C. 20009-2550
     Attorney for Appellant

Michael R. Stiles
United States Attorney
Walter S. Batty, Jr.
Assistant United States Attorney,
Chief of Appeals
Kristin R. Hayes (Argued)
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA
     Attorneys for Appellees

_____

OPINION OF THE COURT
_____

NORRIS, Circuit Judge:

In 1988, Alexander E. Moskovits was convicted by a jury of various narcotics offenses related to the possession and distribution of cocaine. He was sentenced by Judge Louis H. Pollak to fifteen years imprisonment. Judge Pollak later granted Moskovits's  2255 motion to vacate the conviction on the ground that Moskovits's trial counsel was ineffective, United States v. Moskovits, 844 F. Supp. 202 (E.D. Pa. 1993), and granted Moskovits's request to represent himself at the new trial. Moskovits was again convicted and sentenced by Judge Clarence C. Newcomer to a prison term of twenty years, five years longer than the sentence imposed by Judge Pollak.

On appeal, Moskovits contends that his conviction must be set aside on either of two grounds: (1) that his right to testify in his own defense was abridged by the conditions imposed on the format of his testimony, and (2) that he did not knowingly and intelligently waive his Sixth Amendment right to counsel. Moskovits also contends that, even if the conviction is affirmed, the case must be remanded for resentencing because his sentence was based on impermissible considerations. We affirm the conviction but remand for resentencing.

I

Moskovits contends that his conviction must be set aside because the district court imposed unreasonable conditions on his right to testify in his own defense. He argues that these conditions were so onerous that he had no choice but to forgo his right to testify.

We express no view on the propriety of the conditions imposed by Judge Newcomer because Moskovits, by electing not to testify, failed to preserve this issue for appeal. Because Moskovits did not testify, any possible harm flowing from the conditions imposed by Judge Newcomer is speculative and cannot be evaluated in relation to the record as a whole. Accordingly, we decline to set Moskovits's conviction aside on this ground. SeeLuce v. United States, 469 U.S. 38, 41–42 (1984) (defendant must testify in order to raise and preserve the claim of improper impeachment with a prior conviction); United States v. Romano, 849 F.2d 812, 815–16 (3d Cir. 1988) (when defendant refuses to testify, the harm flowing from an in limine order is merely speculative and, thus, not a basis for reversing a conviction); United States v. Nivica, 887 F.2d 1110, 1116–17 (1st Cir. 1989), cert. denied, 494 U.S. 1005 (1990) (defendant who does not testify may not challenge ruling regarding the scope of permissible cross-examination).

II

Moskovits also seeks a new trial on the ground that the colloquy with the district court at the time he waived his right to counsel was thoroughly "deficient." In fact, as the government points out, Judge Pollak conducted a lengthy and detailed colloquy that was, in all respects but one, a model of thoroughness. Judge Pollak set out the dangers and difficulties

of proceeding pro se, stating that it would be "an imprudent course" and that Moskovits would be doing himself "a very very grave disservice." App. at 41. Judge Pollak spelled out the cumbersome procedures Moskovits would have to follow to maintain the distinction between his roles as lawyer and defendant. He endorsed the Assistant United States Attorney's statement that Moskovits would lose the benefit of the advice of counsel regarding the most effective way to present his case to the jury. Judge Pollak also appointed stand-by counsel. Nonetheless, it is undisputed that punishment was not discussed at the waiver hearing. In particular, Judge Pollak did not inform Moskovits of the range of punishments he faced on retrial.

For a waiver of the right to counsel to be "knowing[] and intelligent[]," which it must be in order to be valid, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Faretta v. California, 422 U.S. 806, 835 (1975). To ensure that a defendant "truly appreciates the 'dangers and disadvantages of self-representation,' . . . '[a defendant's] waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, [and] the range of allowable punishments thereunder.'" United States v. Welty, 674 F.2d 185, 188 (3d Cir. 1981) (quoting Faretta, 422 U.S. at 835, and Von Moltke v. Gillies, 332 U.S. 708, 724 (1948) (plurality)) (emphasis added); see also Singer v. Court of Common Pleas, 879 F.2d 1203, 1210 (3d Cir. 1989) (no waiver where court failed to inform defendant of range of punishment he might be exposed to); McMahon v. Fulcomer, 821 F.2d 934, 945 (3d Cir. 1987) (same); Piankhy v. Cuyler, 703 F.2d 728, 731 (3d. Cir. 1983) (same).

The government concedes that Moskovits was not advised during the waiver hearing that he faced the possibility of an increase in the fifteen-year sentence that had been originally imposed by Judge Pollak, but argues that his waiver of his right to counsel was knowing and intelligent because the record shows that he was aware of this possibility at the time of the waiver hearing. The government frames its argument as follows: "[T]he record establishes that although not specifically advised of the possibility of an increased sentence at the waiver hearing before Judge Pollak, Moskovits understood that possibility before the trial commenced before Judge Newcomer." Appellee's Brief at 16. In making this argument, the government relies on the record of proceedings both before and after the waiver hearing conducted by Judge Pollak.

The government relies on United States v. McFadden, 630 F.2d 963 (3d Cir. 1980), cert. denied, 450 U.S. 1043 (1981), for the proposition that if the defendant has otherwise been made aware of the range of punishment he faced, the court is not required to notify him again at the time he waives his right to counsel. McFadden, however, is distinguishable on its facts in a material respect. In McFadden, the record was clear that the defendant was aware of the range of punishment he faced when he waived his right to counsel. As this court said, "[t]he nature

of the charges and the range of punishment had been pointed out in McFadden's two initial appearances before a magistrate." Id.at 972.

Here the record is not at all clear that Moskovits had been made aware when he waived his right to counsel before Judge Pollak that the original 15-year sentence would not serve as a ceiling on the sentence he could receive in the event he was convicted again. The government cites the Pre-Sentence Investigation Reports (PIRs) that were prepared when Moskovits was originally sentenced and resentenced. In relying on these PIRs as evidence that Moskovits was aware that he faced the possibility of an increased sentence if found guilty a second time, the government assumes, implicitly, that Moskovits either read and understood the PIRs or that counsel then representing him explained to him that the maximum sentences set forth in the PIRs could be imposed in spite of the fact that Moskovits's sentence would then exceed the 15-year sentence originally imposed. The government cites no record support for either assumption, and we have found none. Thus there is no record support, as there was in McFadden, for imputing to Moskovits knowledge at the time he waived his right to counsel that the original 15-year sentence would not act as a ceiling on his punishment. Accordingly, we see no basis for inferring that Moskovits was aware from the mere existence of the PIRs that he was facing the possibility of an increased sentence if found guilty a second time, particularly given our mandate to "indulge in every reasonable presumption against waiver" of the right to counsel. Brewer v. Williams, 430 U.S. 387, 404 (1977).

The government also cites a conference in Judge Newcomer's chambers six or seven days before the start of the retrial as evidence that Moskovits was aware at the waiver hearing before Judge Pollak five months earlier that he faced the possibility of a twenty-year sentence. The extract from the transcript of the in-chambers conference relied upon by the government reads as follows:

THE COURT: Okay. Now, my understanding of the law, and I mention this at the outset so that everybody knows my view of the law on this matter, and if you disagree with it that you will then have an opportunity to furnish me with the authority for your stance, is that this sentence having been vacated and a new trial being granted, we are in an entirely new ballgame. And this matter is like a new case coming before me for trial for sentence with the power vested in the presiding judge to determine, if appropriate, if there should be a conviction the sentence that would be applicable.

I understand this case preceded the guidelines, is that right?

THE GOVERNMENT: That is correct, your Honor.

THE COURT: And therefore this case will not be sentenced under the guidelines, is that correct?

THE GOVERNMENT:  That would be --

THE COURT:  If there should be a conviction.  All right.
Now, if anybody disagrees with that, please feel free to
tell me but give me your authority for it because I've
satisfied myself from independent research here in chambers
that that's the case.

MR. MOSKOVITS:  Your Honor.

THE COURT:  Yes, sir.

MR. MOSKOVITS:  With all due respect.  If I understand the
law correctly, there's two cases that come to mind.  One of
them is not --

THE COURT:  If there are, you can do this in writing.

MR. MOSKOVITS: Oh, in writing?

THE COURT:  Yes.

MR. MOSKOVITS:  Thank you, sir.

THE COURT:  I want -- for a matter that important, I would
much prefer to have you do it.  It doesn't have to be fancy
and certainly not long, but I'd like specifically to have
your authority so that I can, you know, search it out  carefully.

MR. MOSKOVITS:  Thank you, your Honor.

App. at 62-64.

        While it is true that Judge Newcomer said he would have
a free hand at sentencing because the retrial would be like a new
case coming before him, he did not say anything about his
authority to impose a sentence longer than fifteen years.
Moreover, even if Moskovits's response to Judge Newcomer
indicates "that Moskovits himself recognized the possibility of
an increased sentence and had conducted legal research in an
attempt to determine the limits of the court's authority,"  as
the government argues, Appellee's Brief at 15, Moskovits's
waiver of his right to counsel would still be defective.  For a
waiver of counsel to be valid, the defendant must be aware of the
dangers of self-representation at the time of the waiver.  Welty,
674 F.2d at 188-89 ("to be valid [a defendant's] waiver must be
made with an apprehension of . . . the range of allowable
punishments") (quoting Von Moltke v. Gillies, 332 U.S. 708, 724
(1948) (plurality)); McFadden, 630 F.2d at 979 n.10 (Adams, J.,
dissenting) ("Von Moltke makes clear [that] a defendant's waiver
of the right to counsel is made knowingly only if he apprehends
the charges and possible punishments at the time the waiver is
made.").
        On this point, the government's reliance on McFadden,

630 F.2d at 963, is again misplaced. In McFadden, the record established that the defendant was aware at the time of the waiver hearing of the range of punishments he faced because he had been given this information during earlier appearances before a magistrate. Here, in contrast, the government is asking us to impute knowledge to Moskovits at the waiver hearing before Judge Pollak on the basis of a proceeding that took place five months after the hearing. In other words, the government is asking us to extend McFadden beyond its holding and infer that a defendant had knowledge at a waiver hearing on the basis of proceedings that occurred five months later. This we decline to do, lest we fail to "indulge every reasonable presumption against waiver of fundamental constitutional rights." Johnson v. Zerbst, 304 U.S. 458, 464 (1938).

The question we now consider is the appropriate remedy for the failure to inform Moskovits that he could receive a sentence longer than his originally imposed sentence of fifteen years. The Supreme Court has recognized that "[c]ases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests," such as, "the necessity for preserving society's interest in the administration of criminal justice . . . . Our approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant . . . a fair trial." United States v. Morrison, 449 U.S. 361, 364-65 (1980).

Although the record does not tell us that Moskovits was aware at the time of his waiver hearing that he could be sentenced to a term longer than fifteen years if found guilty a second time, Moskovits certainly knew that he could again receive a fifteen-year sentence if found guilty at the retrial. Indeed, Moskovits admits that he knew at the time he waived his right to counsel that he could again be sentenced to a fifteen-year term. Appellant's Brief at 6 ("the prior resentencing provided strong support for Mr. Moskovits's understanding that the recently vacated sentence would have served as a ceiling at any re-sentencing following a re-conviction"). As Moskovits's own attorney stressed at the waiver hearing, Moskovits was "ultra bright" and knowledgeable about the case.

Because Moskovits knew at his waiver hearing that he could be sentenced a second time to a fifteen-year term, the only prejudice he could conceivably suffer from the deprivation of his Sixth Amendment right is a sentence greater than fifteen years. Accordingly, the appropriate remedy for the deprivation is to affirm the conviction but impose a fifteen-year ceiling on Moskovits's sentence. Cf. Scott v. Illinois, 440 U.S. 367, 374 (1979) (although the Sixth Amendment guarantees the right to counsel during a misdemeanor prosecution, failure to provide counsel is not unconstitutional as long as the defendant is not punished by imprisonment, even if imprisonment is authorized by statute); United States v. Reilley, 948 F.2d 648, 654 (10th Cir. 1991) (striking down portion of sentence imposed on uncounseled misdemeanor defendant that involved conditionally suspended term

of imprisonment but affirming portion of sentence involving a fine); United States v. White, 529 F.2d 1390, 1394 (8th Cir. 1976) (upholding conviction but vacating suspended prison sentence imposed on misdemeanor defendant who did not waive right to counsel).

The twenty-year sentence imposed by Judge Newcomer is vacated and the case is remanded for resentencing.

## III

We now turn to Moskovits's claims of error at the sentencing phase of the retrial. Judge Newcomer gave a number of reasons for the twenty-year sentence he imposed, among which were the serious nature of the crimes, Moskovits's prior involvement in the transportation and distribution of cocaine, Moskovits's poor prospects for rehabilitation, and Moskovits's lack of remorse and failure to accept responsibility for his crimes, as evidenced--among other things--by Moskovits's refusal to accept the government's plea offer. In addition, Judge Newcomer specifically cited his finding that Moskovits committed perjury at the evidentiary hearing on his 2255 petition as a justification for imposing a sentence that was greater than the fifteen-year sentence originally imposed. Moskovits argues that his case must be remanded for resentencing because Judge Newcomer (A) acted with actual vindictiveness when he imposed a harsher sentence after the retrial, (B) improperly punished Moskovits for refusing to plead guilty, and (C) erred when he found that Moskovits had committed perjury at the 2255 hearing before Judge Pollak and considered this finding at sentencing. We address each of these arguments in turn.

## A

Moskovits does not attempt to invoke the presumption of vindictiveness that normally arises when a harsher sentence is imposed after a retrial. See North Carolina v. Pearce, 395 U.S. 711, 725-26 (1969). Nor could he. We have held that a harsher sentence imposed after a retrial is not presumed to be vindictive if it is imposed by a "judge who . . . ha[d] no material contact with the initial trial or sentence and 'provides an on-the-record, wholly logical, non-vindictive reason for the harsher sentence.'" Rock v. Zimmerman, 959 F.2d 1237, 1257-58 (3d Cir. 1992) (en banc) (quoting Texas v. McCullough, 475 U.S. 134, 140 (1986)). Judge Newcomer had no contact whatsoever with Moskovits's initial trial and set out, on the record, plausible reasons for the harsher sentence he imposed.

Moskovits instead argues that the harsher sentence imposed by Judge Newcomer resulted from actual vindictiveness. The only proof of Judge Newcomer's actual vindictiveness offered by Moskovits is Judge Newcomer's statement that if he "were to sentence Moskovits to the same sentence that he originally received, it would countenance frivolous Section 2255 claims and encourage defendants to file them in hopes of gaining a reduced sentence long after their time to file Rule 35 motions had expired." App. at 135. According to Moskovits, Judge Newcomer's characterization of his successful 2255 petition as "frivolous"

reflects the actual vindictiveness with which he imposed sentence.  We are, however, not persuaded that this statement alone is enough to establish actual vindictiveness, particularly in light of the numerous other, logical reasons Judge Newcomer stated for imposing the twenty-year sentence.

B

After Judge Pollak granted Moskovits a new trial, the government offered a plea bargain involving a sentence no greater than time served.  Moskovits's rejection of this offer was a factor considered by Judge Newcomer when he imposed the twenty-year sentence.  As Judge Newcomer explained, "[t]o me, [Moskovits's] refusal to accept the plea is further evidence of his lack of remorse and failure to take responsibility for his crimes."  App. at 137.

We agree with Moskovits that Judge Newcomer erred when he considered as a sentencing factor Moskovits's decision to exercise his constitutional right to a trial by jury rather than accept the government's plea offer. United States v. Jackson, 390 U.S. 570, 581-82 (1968) (invalidating death sentence under Federal Kidnapping Act because it could be imposed only upon a defendant who elected a jury trial, whereas the maximum penalty that could be imposed on a defendant waiving this right was life imprisonment); Corbitt v. New Jersey, 439 U.S. 212, 223 (1978) (upholding statute that allows judge to exercise leniency by choosing a lesser sentence for murder defendants who pleaded non vult); United States v. Paramo, 998 F.2d 1212, 1219 (3d Cir. 1993) (prosecutor may not refrain from filing a motion necessary for a downward departure because the defendant elected to go to trial), cert. denied, 114 S. Ct. 1076 (1994).

The government argues that Judge Newcomer's comment, quoted above, does not show that he was penalizing Moskovits for having elected to go to trial but rather merely expresses Judge Newcomer's view that Moskovits had been unwise to reject the plea offer.  The government also asserts, without explanation, that Judge Newcomer was not punishing Moskovits for exercising his right to go to trial, but was merely withholding leniency.  These arguments are implausible, however, in light of the fact that Judge Newcomer made his comment in the context of setting out his reasons for the harsher sentence he was imposing.

C

Moskovits argues that Judge Newcomer also committed error in basing his twenty-year sentence on a finding of fact that Moskovits committed perjury at the evidentiary hearing held on his  2255 petition.  Judge Newcomer's finding of perjury was based upon his reading of the transcript of Moskovits's  2255 testimony before Judge Pollak, considering the testimony of the government's witnesses, and concluding that the version of the facts to which Moskovits testified was contradicted by the verdicts of the juries at his original trial and retrial.  As Judge Newcomer put it, "[t]he proof that Moskovits perjured himself lies in the fact that two juries listened to the identical evidence [that Moskovits denied at the  2255 hearing] and convicted him."  App. at 132.

Moskovits argues that Judge Newcomer's finding of perjury was improper because it was not made independently of the juries' verdicts. Moskovits relies on United States v. Dunnigan, 113 S. Ct. 1111 (1993), which holds that a district court that enhances a sentence because the defendant committed perjury must "review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice." Id. at 1117 (interpreting federal sentencing guidelines). In other words, the sentencing judge must have a basis for his finding of perjury that is "independent" of the jury verdict.

In response, the government asserts that Judge Newcomer independently considered the testimony of the witnesses for the prosecution at the retrial, recognized that the juries by their verdicts had found these witnesses' version of the facts to be true beyond a reasonable doubt, and concluded that Moskovits committed perjury when he testified at the 2255 hearing to a contradictory version of the facts.

We are satisfied that Judge Newcomer did not err when he made a finding that Moskovits committed perjury at the 2255 hearing. Judge Newcomer explained on the record that there were "numerous occasions on both direct and cross-examination [when] Moskovits testified that he did not take the specific criminal actions which the Government's evidence established that he did take." App. at 132. Judge Newcomer specifically cited Moskovits's testimony that he did not receive phone calls from one of his alleged co-conspirators while he was in prison in Mexico, which was contradicted by the co-conspirator's testimony and phone bills; his testimony that there was an innocent explanation for his actions in connection with a package of cocaine, which was contradicted by the testimony of five government witnesses; his denial that he directed two co-conspirators to travel to South America and purchase cocaine there, which was contradicted by the co-conspirators' testimony; his disavowal of ownership of a machine gun, which was contradicted by the testimony of four government witnesses; and his assertion that eight tape recordings of telephone conversations with a co-conspirator did not relate to drug transactions, which was contradicted by the testimony of the co-conspirator and two other government witnesses. App. at 132-34.

Although Judge Newcomer was not present at the hearing and thus not in a position to observe Moskovits's testimony, Dunnigan leaves open the possibility of finding all the elements of perjury -- falsity, materiality, and willfulness -- when there are "numerous witnesses who contradicted [the defendant] regarding so many facts on which [he] could not have been mistaken." Dunnigan, 113 S. Ct. at 1117. See also United States v. Boggi, 74 F.3d 470, 478-79 (3d Cir. 1996) (upholding sentencing judge's finding of perjury under the Sentencing Guidelines, in part by reference to facts implicit in the jury's verdict). Moreover, because Judge Newcomer was sentencing Moskovits under the pre-Sentencing Guidelines regime, he had broad discretion to consider any and all information about Moskovits's relevant conduct and to determine what effect, if

any, that information would have on the sentence.  See United States v. Grayson, 438 U.S. 41, 51 (1977) (upholding sentencing enhancement in pre-Guidelines case on sentencing judge's view, based on government's rebuttal evidence and cross-examination, that the defendant committed perjury during trial); United States v. Tucker, 404 U.S. 443, 446 (1972) (in pre-Guidelines case, "before making [the sentencing] determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come").

The conviction is AFFIRMED.  The twenty-year sentence imposed by Judge Newcomer is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

UNITED STATES OF AMERICA V. ALEXANDER EUGENIO MOSKOVITS
NOS. 94-1990 AND 95-1048
STAPLETON, J., concurring in part and dissenting in part:
I join sections I and III of the court's opinion, although I believe that a more detailed explanation is warranted regarding section III-B.  I cannot join section II.

I.

In section II, the court concludes that Moskovits' waiver of his right to counsel cannot be said to be knowing and intelligent because the record fails to show that he was aware at the waiver hearing that his sentence after retrial could be greater than his vacated sentence.  I agree that Moskovits could not knowingly and intelligently waive the right to counsel without knowing that he had something to lose in a retrial.  Further, I agree that Moskovits was not advised at the waiver hearing that he could face a greater sentence after retrial.
The record does affirmatively establish, however, that this advice would not have altered Moskovits' decision to represent himself and, accordingly, that the failure to give it had no effect on the subsequent course of events.  Under these circumstances, I find no basis for disturbing Moskovits' conviction.

When Moskovits indicated a desire to represent himself, Judge Pollak spoke at length and in depth with him about his right to counsel and the dangers of self-representation. Moskovits acknowledges that Judge Pollak "touched all the bases" save the one he now stresses.  Only after Moskovits insisted that he understood the advantages of counsel and the disadvantages of self-representation did Judge Pollak agree to let Moskovits take the lead role in his own defense.  In order to provide assistance to Moskovits, however, and to protect against prejudice to him in the event he should thereafter have a change of heart, Judge Pollak appointed two back-up counsel who would be prepared to consult and to take over at any point.  This is of crucial importance to the issue before us because Moskovits was expressly advised a week before the retrial that he could receive a higher sentence and he chose once again to reject representation and opt for self-representation.  Given that Moskovits had and rejected the option of effective professional representation after

learning what he had at stake, it involves no speculation to conclude that Moskovits would have chosen self-representation following a flawless waiver hearing and that the deficiency to which he now points had no effect on these proceedings. Limiting Moskovits' sentence under these circumstances would constitute a windfall, pure and simple.

I am mindful that "[s]ome constitutional violations . . . by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless." Satterwhite v. Texas, 486 U.S. 249, 256 (1988). Such is the case where "any inquiry into a claim of harmless error . . . would require, unlike most cases, unguided speculation." Id. (quoting Holloway v. Arkansas, 435 U.S. 475, 491 (1978). Accordingly, this court has refused to speculate on whether representation throughout trial for a criminal defendant would have produced a result different from that achieved by the defendant without representation. It is simply impossible to tell what a skilled and fully informed counsel would have been able to accomplish during the representation. See United States v. Welty, 674 F.2d 185, 194 n.6 (3d Cir. 1982). On the other hand, the general rule remains that a criminal conviction should not be overturned if there is no causal connection between the judgment and the alleged constitutional error. Even where the Sixth Amendment right to counsel has been infringed, an affirmance is in order if the "scope [of the error] is readily identifiable" and "the reviewing court can undertake with some confidence its relatively narrow task of assessing the likelihood that the error materially affected" the outcome. Satterwhite, 486 U.S. at 256 (quoting Holloway, 435 U.S. at 490).

Determining that there was no causal connection here between the alleged constitutional error and Moskovits' conviction involves no speculation. On the contrary, the record establishes with certainty that the district court's failure to advise Moskovits at the waiver hearing of the range of penalties he faced did not affect Moskovits' decision to represent himself, and hence did not in any way affect the subsequent course of events.

II.

In part III-B, the court concludes that the district court did not err when it sentenced Moskovits in part based on its finding that Moskovits committed perjury at the habeas hearing. While I believe that the court's discussion is fully consistent with my interpretation of United States v. Dunnigan, 113 S. Ct. 1111 (1993), in my view, a more detailed explanation is warranted.

Dunnigan stands for two propositions. First, in order for a district court to enhance a sentence for perjury pursuant to United States Sentencing Guidelines ("U.S.S.G.") 3C1.1, the district court must review the record and find by a preponderance of the evidence that each of the elements of perjury (willfulness, falsity, and materiality) is present. The district court cannot assume that a defendant has perjured herself merely because she has testified at trial and was found guilty. Because

the sentencing court must make affirmative findings with respect to each element of perjury, its conclusion is "independent" of the jury verdict.  Id.  Second, when a court enhances the sentence of a defendant who testified at trial in accordance with this procedure, the court does not violate the defendant's right to testify at trial on her own behalf.  Dunnigan, 113 S. Ct. at 1117-19.

It is important to realize that while a court, under Dunnigan, must make "independent findings" with respect to each perjury element, this does not mean that the jury's verdict may not play a role in this fact finding process.  Just as a jury verdict has issue preclusive effects in subsequent proceedings with respect to facts necessarily resolved by a criminal jury, e.g., Appley v. West, 832 F.2d 1021, 1025-26 (7th Cir. 1987), "a guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in the verdict."  United States v. Boggi, 74 F.3d 470, 478-79 (3d Cir. 1996) (quoting from United States v. Weston, 960 F.2d 212, 218 (1st Cir. 1992)).  Thus, if a defendant has testified that he was elsewhere at the time of a robbery, and the jury finds him guilty of that robbery, the jury's verdict provides a sufficient basis for a finding by the court that the defendant's testimony was false.  If the record also provides support for findings that this false statement was material and willful and the court so finds, an enhancement under  3C1.1 is clearly appropriate.

The district court here found by a preponderance of the evidence that Moskovits perjured himself at the habeas hearing:

To obtain a new trial, Moskovits had to convince the court . . . that his testimony was such that it rendered the jury's verdict suspect.  [T]o sustain that heavy burden, Moskovits resorted to perjury.  Moskovits' perjury consists of his repeated denial of his involvement in specific events which occurred during the course of the conspiracy."

(A. 131-2.)  This finding encompasses all of the elements of perjury.  Compare Boggi, 74 F.3d at 479 (holding that the following finding encompassed all of the elements of perjury: "I don't see how, in view of his flat denials and the jury's conviction, that you can find otherwise than that he testified falsely on the stand.").

The district court's conclusion by a preponderance of the evidence that all of the elements of perjury are present is well supported by the record even though Judge Newcomer was not present at the habeas hearing.  Regarding falsity, Moskovits testified repeatedly that he was not involved in the cocaine distributions alleged in the indictment.  This is evident from the transcript of the hearing.  The jury convicted Moskovits of distributing cocaine as alleged in the indictment and it necessarily resolved this factual issue when it convicted him.  The district court was bound by this determination and had no choice but to conclude that Moskovits' testimony that he was not involved in the alleged cocaine distributions was false.  That Moskovits may have been able to convince the jury otherwise had

he testified at trial is irrelevant.

Moreover, it is indisputable that this testimony was material.  The purpose of the habeas hearing was to determine if there was a reasonable probability that by testifying Moskovits could have convinced the jury that he was innocent.  As the district court observed, Moskovits had a "heavy burden" of trying to "convince the court . . . that the jury's verdict [in the first trial] was suspect" and he "resorted to perjury" in order to carry that burden.

Finally, regarding willfulness, given Moskovits' testimony "regarding so many facts on which []he could not have been mistaken, there is ample support for the District Court's finding [of willfulness]."  Dunnigan, 113 S. Ct. at 1117.  The district court could make this determination by a preponderance of the evidence based on the transcript of the hearing alone.  Moreover, the inference of willfulness was more compelling because Moskovits did not offer any alternative explanation.  In response to the government's argument in favor of a heavier sentence reflecting perjury, Moskovits offered no explanation suggesting that his testimony was not willful.  On the contrary, he did not waiver from the version of events he recounted at the habeas hearing.

### III.

I agree with the court that it was error for the district court to consider Moskovits' rejection of the government's plea offer as an aggravating factor in determining the appropriate sentence.  Accordingly, I would reverse and remand for resentencing.  I would not, however, limit the district court's discretion to a sentence of fifteen years or less.